Argued and submitted November 14, 1980,
affirmed April 6, 1981

GREGORY et ux,
*Respondents,*

*v.*

WEBER,
*Appellant.*

(No. 78-4-153, CA 15154)

626 P2d 392

Margaretta Eakin, Portland, argued the cause and filed the briefs for appellant.

Robert A. Bennett, Portland, argued the cause for respondents. With him on the brief were JoAnn B. Reynolds and Willner, Bennett, Bobbitt & Hartman, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

WARREN, J.

Defendant appeals from a judgment for plaintiffs after trial to the court in an action for specific performance of certain terms a home construction contract and for damages. Plaintiffs sought a decree compelling defendant, a builder, to convey title to the property[1] and also prayed for damages for loss of use of the house and for the cost of having the house completed. The trial court awarded specific performance as requested and entered a judgment for the claimed damages.[2] Defendant assigns error to (1) the trial court's decreeing specific performance but not ordering defendant to complete the building; (2) the finding that defendant was responsible for delays he claimed were beyond his control; (3) the improper use of rental value as a measure of loss of use; and (4) the court's reliance on testimony by plaintiffs' expert and the exclusion of testimony by defendant's expert concerning costs of completion. We affirm.

The original contract to construct the home, executed in March, 1977, provided for plaintiffs to pay $65,000. Defendant's position in a nutshell is that plaintiffs agreed in a telephone conversation in April, 1977, to pay him $20,000-30,000 for certain changes in the original plans, which consisted of switching the location of the

---

[1] In this transaction, the builder had title to the property until the building was completed.

[2] The judgment order provides in relevant part:

"1. Defendant shall forthwith relinquish possession to Plaintiffs of the real property described as Lot 19, PORTNOMAH PARK, Portland, Multnomah County, Oregon and he shall convey his interest therein to Plaintiffs by good and sufficient deed. Plaintiffs shall assume the mortgage executed by Defendant in favor of Far West Federal Savings and Loan Association and the parties shall execute whatever documents are reasonably required to conclude the escrow now pending with Title Insurance Company.

"2. Plaintiffs shall have judgment against Defendant in the amount of $11,100.00 for loss of use of the residence from January 1, 1978 to July 15, 1979, based upon a reasonable rental value of $600.00 per month.

"3. Plaintiffs shall have a further judgment against Defendant in the sum of $22,655.00, which sum represents the reasonable cost to Plaintiffs to complete the residence after taking into consideration all sums which Plaintiffs owe to Defendant for costs incurred in excess of the contract allowances and for the sum owing under the change order agreement of October 3, 1977."

kitchen and living/dining rooms, and in the process deleting a patio and adding a pantry; adding a walk-in closet in the master bedroom; extending the garage two feet; and adding a fourth bedroom. Plaintiffs contend that most of these changes were agreed upon either in March, 1977, when the contract was signed, or in October, 1977, when a change order agreement for $945 was made covering finishing of a fourth bedroom and other work.

The trial judge stated his reasons for finding for plaintiffs:

"THE COURT: I may make some mistakes. I have done my best to try to figure out these various problems. First I'm going to grant the specific performance.

"I do it for about four different reasons, Mr. Weber. You may think that you are an experienced contractor, but I think you are extremely inexperienced in this job. I can't accept the testimony that the Gregorys agreed to pay an additional 20- to $30,000. You had the second plans about April the 27th or 28th. It was obvious with 8- or 900 square feet in addition that you would have prepared a subsequent agreement for that sum of money, 20- to $30,000.

"I think you acquiesced in it. First if you're going to need 20- or $30,000 more, certainly you would have borrowed that from Far West instead of leaving it at $52,000. I am sure you weren't financially capable of picking up a 20- to $30,000 loss.

"Secondly, you indicated * * * that you just didn't have time to prepare changes or addendums, but yet Exhibit 7 shows you wrote out an addendum for only $945, and yet you want the Court to believe that you — Gregorys had agreed to pay you 20-to $30,000. I can't accept that."

Defendant seeks to overturn the decree of specific performance for a number of reasons, none of which we find persuasive. Defendant contends that the usual weight should not be given to the trial court's determination as to credibility, since one of the plaintiffs, Mr. Gregory, did not testify in person on the key issues. Not only did defendant have Mr. Gregory testify briefly at trial, but the trial judge stated for the record that there was an "understanding" that due to plaintiff's bad health, his deposition would be used. Had defendant intended to challenge Mr. Gregory's credibility, he need not have entered into the stipulation.

Additionally, as can be seen from the trial judge's comments quoted above, the credibility question was resolved against defendant on his own testimony.

■■    Defendant contends the evidence supports his position that the Gregorys had agreed to pay an additional $20,000-30,000 for the changes made in the original plans. Where the evidence is conflicting, this court will defer to the trial court's findings unless the record gives a basis for weighing credibility differently than did the trial judge. *Stoll v. Curl,* 275 Or 487, 490, 551 P2d 1058 (1976). We agree with the trial court that it is highly unlikely that defendant would have memorialized in writing changes amounting to $945 and left unwritten a previous agreement for a change costing $20,000-30,000. We find no reason to disturb the trial court's view of the evidence.

■■    Defendant also contends that the contract was too vague and indefinite for specific performance since a sketch of the disputed remodelling changes was not produced by plaintiffs at trial. The sketch was not necessary to require defendant to convey title, the only act requested to be specifically performed. Defendant claims that specific performance is inequitable, because the original consideration for construction was grossly inadequate to cover the additional changes. Not only were the changes not quite as substantial as defendant would have us believe,[3] but defendant cannot prevail merely because he made a poor bargain. We agree with the trial court that defendant agreed to the modifications.

Finally, defendant seems to be requesting the court to allow or require him to complete the construction. Plaintiffs did not pray for that relief, and defendant did not, either in his pleadings or at trial, request to complete the house. The trial court remarked at the close of trial that he

---

[3] We are persuaded, for example, that reference to the pantry was made in the second set of plans to which defendant agreed; the pantry did not exist in the first set of plans, but was created by deleting the patio. In addition, we find convincing the explanation that the fourth bedroom was merely unused space which the architect designated on the plans as a bedroom, and that the bedroom was created when the parties agreed that the room be finished in the October, 1977, change order agreement.

gathered *neither* party wanted defendant to complete construction. There is no indication in the record that defendant then sought to be allowed to complete the construction himself. We do not interpret defendant's estimate of costs of completion to be an offer to do the work.[4] We conclude the decree of specific performance was not in error.

■     With regard to delays in construction, we concur with the trial court's conclusion that, even granting defendant four months' credit for unavoidable delays, as the trial court did, the building should have been completed by January, 1978. Defendant asserts that plaintiffs limited their claim by their allegation in the complaint that the building was not completed by the agreed-upon time in August, 1977. But defendant never completed the building, and plaintiffs prayed for damages for loss of use up to the date of judgment. The only question is the proper measure of damages for plaintiffs' loss of use of the residential building. Without citation of any authority, defendant contends that plaintiffs' actual expenditure for alternative housing should be the measure of damages. Plaintiffs' actual housing costs bear no logical relationship to the value of the premises had they been timely completed. They could have elected to live in a bungalow or a mansion, but that does not bear on the value of the lost use. The most convenient index of the value of loss of use in this situation is rental value, despite plaintiffs' intention to reside in the house. We are in accord with the following comment from the Restatement regarding damages for breach of a construction contract:

> "Where the builder commits a breach by delay in completion and the other party has been deprived of the use of the finished product during the period of delay, the ordinary compensation for such deprivation is the rental value of that product. *This is the case even though the use expected to be made of it was not the rent of it to others,* and even

---

[4] Defendant testified as follows concerning his assessment of the total cost of building the house:

"Q Does that also include any costs of completion?

"A Yes, it does.

"Q Approximately what is that, or if you have the figure, I missed.

"A Um, I would say it would be estimated in the neighborhood of about $3,000, but I do have all of the materials to do the job."

though some other use of it might have resulted in a different return. If the builder had reason to foresee that the product would be put to a special use and that an exceptional return would be made, the present Subsection does not deny the other party compensation measured by that exceptional return; he can get judgment for the amount thereof if he can comply with the rule as to certainty of proof." (Emphasis added.) Restatement of Contracts, § 346(1)(b), comment c (1932).

The trial court used a proper measure of damages.

■■ Defendant challenges as deficient plaintiffs' expert's testimony on costs of completion. This estimate was made by an experienced builder of residences who inspected the house twice, examined the plans, consulted with subcontractors, and submitted a written estimate listing items to be completed. This estimate was sufficient to establish damages with "reasonable certainty." *See Stubblefield v. Montgomery Ward & Co.,* 163 Or 432, 447, 96 P2d 774, 98 P2d 14 (1940). There is no evidence showing this estimate to be inconsistent with defendant's own estimate, *supra,* n 4. At trial, plaintiffs only asked for $25,000 for cost of completion rather than the full amount of the estimate, in order to allow offsets for certain items which plaintiffs had agreed to pay. From that figure, the trial court deducted $1400 for a deck and $945 for the change order agreement of October, 1977, to arrive at the final figure of $22,655. Defendant's own expert testified the house was actually worth over $135,000; and plaintiffs testified the house was 80-85% completed. We find the trial court's award reasonable.

■ Defendant contends the trial court should have allowed his expert, an appraiser, to testify as to the cost of completion of the building. Defendant made no offer of proof. The trial court ruled that the expert was not qualified as an expert since he was not shown to be a contractor. We do not pass on that ruling, for we are of the view that defendant's failure to make an offer of proof makes it impossible for us to determine whether defendant was prejudiced by the exclusion of his expert's testimony. *Moore Mill & Lbr. Co. v. Foster,* 216 Or 204, 255, 336 P2d 39, 337 P2d 810 (1959); *see also Wulff v. Sprouse-Reitz,* 262 Or 293, 312, 498 P2d 766 (1972) (in order to claim prejudicial error

in court's refusal to allow production of an exhibit, defendants had the obligation to make the sought-after material part of the record).

Affirmed.