FELIX J. AMBROSE, d/b/a F. J. Ambrose Construction, *et al.*, Plaintiffs-Appellees and Counterdefendants-Appellees, v. AUBREY F. BIGGS *et al.*, Defendants-Appellants (Aubrey F. Biggs *et al.*, Counterplaintiffs-Appellants).

Second District  No. 2—86—0095

Opinion filed May 27, 1987.—Rehearing denied July 16, 1987.

Newton E. Finn, of Waukegan, for appellants.

Michael A. Greenblatt, of Greenblatt & Greenblatt, of Waukegan, for appellees.

JUSTICE DUNN delivered the opinion of the court:

This appeal arises from a building contract entered into between Felix Ambrose, d/b/a F. J. Ambrose Construction Company, (Ambrose), and Aubrey and Beverly Biggs (Biggses), for the construction of a house on property owned by the Biggses. A dispute over the final payout on the contract caused Ambrose to file claims for a mechanic's lien and breach of contract against, among others, the Biggses. The Biggses counterclaimed for damages. After a bench trial, the court found in favor of Ambrose on its contract claim, against Ambrose on its mechanic's lien claim, and against the Biggses on their counterclaim. The Biggses appealed.

The contract was signed by the parties on September 1, 1983, and included the following pertinent provisions: (1) payment of the contract price was to be made in three installments—the first payout when construction was under roof, the second payout when the trades were roughed in, and the third and final payout upon substantial completion of the building; (2) Ambrose would comply with the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 1 *et seq.*); (3) the building must be

substantially completed in six months; and (4) any extras must be evidenced in writing and any adjustment to the contract price resulting from extras shall be determined by mutual agreement of the parties before starting the work involved.

Ambrose proceeded to build the house, and the Biggses made the first two payouts as the work progressed. The payouts were made despite Ambrose's lack of compliance with the Mechanics' Liens Act's requirement that a sworn contractor's statement be provided prior to any payouts by the owner. (Ill. Rev. Stat. 1983, ch. 82, par. 5.) During construction, the Biggses, one or both of whom were on the premises nearly every day, ordered several extras which Ambrose duly constructed. In August 1984, as the house neared completion, Ambrose requested the final payout. The Biggses refused to make the payment and Ambrose stopped work.

Ambrose initiated suit against the Biggses seeking enforcement of a mechanic's lien and recovery of damages on the contract. The Biggses responded by asserting that Ambrose's failure to file a proper sworn contractor's statement vitiated the mechanic's lien and contract claims. Additionally, the Biggses contended that Ambrose's failure to substantially complete the contract within the contractually required period entitled them to monetary damages and that Ambrose should be denied payment for extras because there was neither written evidence of the extras nor any agreement concerning their price. The court found, *inter alia*, that Ambrose's failure to file a proper sworn contractor's statement precluded the mechanic's lien claim; the Biggses' failure to comply with the Mechanics' Liens Act allowed Ambrose to recover on the contract claim; the Biggses could not recover damages for Ambrose's delay in completing the house; and the Biggses had waived the procedural requirements of the contractual provision addressing extras.

Before proceeding to the arguments raised by the parties, we note that the trial court's denial of Ambrose's mechanic's lien claim has not been contested on appeal. Therefore, we decline comment on that ruling and confine our decision to the contract claims raised.

The Biggses first contend that Ambrose's failure to provide a proper sworn contractor's statement precluded Ambrose from recovering damages on the contract and, therefore, the trial court erred in not dismissing both the mechanic's lien claim and the contract claim. Ambrose, without citation to any supporting legal authority, responds that the trial court correctly found that the Biggses had waived compliance with the mechanic's lien provision of the contract and Ambrose could therefore recover on the contract. We agree with the Biggses

that the trial court should have also dismissed the contract claim.

At issue is whether a contractor can recover damages on a contract claim against an owner, despite the contractor's failure to provide a sworn contractor's statement as provided in section 5 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 5). Section 5, which is applicable to every construction contract between an owner and a contractor, unequivocally imposes a duty on the contractor to give and the owner to require "a statement in writing, under oath or verified by affidavit, of the names and addresses of the parties furnishing materials and labor, and of the amounts due or to become due each," before the owner shall be required to pay moneys due to the contractor. (Ill. Rev. Stat. 1983, ch. 82, par. 5.) In an action involving solely a mechanic's lien claim, the failure of both the owner and contractor to comply with section 5 has been held not to be a bar to a contractor's mechanic's lien claim. (*Abbott Electrical Construction Co. v. Ladin* (1986), 144 Ill. App. 3d 974.) The apparent rationale being that all subcontractors having a mechanic's lien on the property against which the foreclosure action is brought are necessary parties to the action (*Anderson v. Gousset* (1965), 60 Ill. App. 2d 309, 311), and, thus, their interests will be protected regardless of whether a contractor's statement is provided.

■ In the present case, however, we are concerned with a contract claim. Contrary to a mechanic's lien claim, subcontractors are not necessary parties to a contract claim between an owner and a contractor. As a result, in the context of a contract claim, an owner is not protected from potential subcontractors' claims unless a proper contractor's statement is provided. Consequently, an owner acts at the risk of valid subcontractors' claims when making payment to a contractor without the benefit of a contractor's statement. (*Deerfield Electric Co. Inc. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380, 386.) On account of this substantial risk, the Biggses' refusal to make the final payment in the absence of a contractor's statement was justified in order to protect against potential subcontractors' lien claims. Thus, while the Biggses' failure to obtain a contractor's statement prior to making the first two payments on the contract subjected them to potential claims by subcontractors, we do not believe this unadvisable conduct served to waive subsequent protection provided by the contractor's statement requirement. For these reasons, the trial court erred in finding that Ambrose could recover on the contract claim.

The Biggses next contend that they should have been awarded damages for Ambrose's delay in completing the house. The contract provided that the house would be substantially completed in six

months. Ambrose did not finish working on the house until approximately five months after the scheduled completion date. The Biggses argue that the trial court erred in ruling that absent a liquidated damages clause, damages for delay are only recoverable in a commercial situation. Relying on *Galbraith v. Chicago Architectural Iron Works* (1893), 50 Ill. App. 247, and *Korf v. Lull* (1873), 70 Ill. 420, the Biggses assert that damages for delay in construction are recoverable regardless of the intended use or rentability of the building.

In *Galbraith*, the court awarded damages for delay in the construction of iron entrance arches to an office building. In awarding damages equal to the rental value of the building for the period of delay, the court stated that: "No inquiry as to what use the appellant had for the premises, is admissible, or whether he could or could not have rented them[;] *** [t]he rental value only is to be considered in estimating the damages." (*Galbraith v. Chicago Architectural Iron Works* (1893), 50 Ill. App. 247, 253.) Although the building in *Galbraith* was commercial, the court clearly indicated that a contractor's delay in constructing a residence entitles the owner to recover damages equal to the rental value for the period of delay. In *Korf*, our supreme court implicitly adopted this rule of law when it instructed the trial court that on remand, damages equal to the rental value of the house should be awarded for any unreasonable period of delay found to be attributable to the builder. *Korf v. Lull* (1873), 70 Ill. 420, 424.

■■■ The owner's right to recover damages for delay in the construction of a residence is consistent with the remedies available in contract cases. The owner has been denied the use of the building for the period of delay and should be compensated for the loss of use of the premises. (*Potter v. Anderson* (1970), 85 S.D. 142, ____, 178 N.W.2d 743, 746; *Morgan-National Woodworking Co. v. Cline* (1949), 324 Mass. 15, 17, 84 N.E.2d 460, 461.) Fair rental value of the house has been recognized as the appropriate measure of damages. (*Korf v. Lull* (1873), 70 Ill. 420, 424; *Gregory v. Weber* (1981), 51 Or. App. 547, 552, 626 P.2d 392, 396.) Therefore, the trial court erroneously denied the Biggses damages for the delay in construction. Although the Biggses presented evidence of the rental value of the house, the trial court did not consider the parties' contentions concerning the period of delay attributable to Ambrose, and, therefore we must remand the cause to the trial court for further consideration of this issue.

The Biggses' final contention is that the trial court erred in entering judgment in favor of Ambrose for certain extras that were added to the house. The contract provided that any extras must be evidenced in writing and any adjustment in the contract price resulting from said

extras shall be determined by mutual agreement of the parties before starting the work involved. The gist of the Biggses' argument is that Ambrose's failure to make timely demands for additional compensation and the absence of proof demonstrating that the Biggses agreed to pay for the extras precluded Ambrose from recovering payment for the extras in dispute.

In *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 389-90, this court held that a contractor seeking to recover for extras must establish by clear and convincing evidence that: (1) the extras were outside the scope of his original contractual promises; (2) the owner requested the extras; (3) the owner agreed to pay extra, either by words or conduct; (4) the contractor did not voluntarily proceed with the extra work; (5) the extras were not necessitated by reason of some default by the contractor. Here, it is not disputed that elements 1, 2, 4, and 5 were established by clear and convincing evidence. To be determined is whether or not the Biggses agreed to pay an additional amount for the extras.

As stated in *Watson*, an owner's agreement to pay for extras can be evidenced by either words or conduct. At least one of the Biggses was on the house site nearly every day of construction. They ordered the extras and did not object when Ambrose added the extras to the house. Under these circumstances it has been recognized that an owner impliedly agrees to pay a reasonable price for the extras. (*Wingler v. Niblack* (1978), 58 Ill. App. 3d 287, 289.) The trial court concluded that the standards in Watson were satisfied and entered judgment accordingly. However, recovery by Ambrose for extras is subject to the same infirmity present in his contract claim, namely, his failure to give the Biggses a sufficient contractor's statement. His claim for extras is therefore similarly barred.

In summary, the trial court erred in finding that Ambrose could recover on the contract and was entitled to compensation for the extras in dispute. The trial court erred in denying the Biggses damages for the delay in completion of the building. Because the trial court did not consider what period of delay was attributable to Ambrose, we remand for further consideration on this issue.

For the reasons stated herein, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

HOPF AND UNVERZAGT, JJ., concur.