NATIONAL WRECKING COMPANY, Plaintiff and Counterdefendant-Appellee, v. MIDWEST TERMINAL CORPORATION, Defendant and Counterclaimant-Appellant (Raymond Harkrider *et al.*, Appellants).

First District (3rd Division) Nos. 1—87—1899, 1—88—2587, 1—88—3600, 1—89—0279 cons.

Opinion filed September 9, 1992.

Paul J. Bargiel, P.C., of Chicago, for appellants.

Schwartz & Freeman, of Chicago (Susan A. Berkowitz and Aaron E. Hoffman, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:

Appellants Midwest Terminal Corporation (Midwest) and its attorneys Raymond Harkrider and Stephen Sadin appeal from orders of the circuit court granting a motion to disqualify Harkrider from representing Midwest, denying Midwest's motion to disqualify plaintiff's counsel, entering judgment for plaintiff on its complaint, and awarding attorney fees to plaintiff.

This action arose in connection with work performed by plaintiff, National Wrecking Company, on property owned by Midwest. The property was located on a lot bordered by West 21st Street on the north, Canalport Avenue on the south and Morgan and Sangamon Streets on the west and east. Midwest owned the northern portion of the lot, which was approximately 62,000 square feet in size. The southern border of Midwest's property was irregular, commencing on Sangamon Street approximately 37 feet south of 21st Street and running diagonally in a southwesterly direction on a line parallel with Canalport Avenue to a point approximately 115 feet to the north of Canalport Avenue on Morgan Street.

The southern portion of the lot was owned by the Chicago Sanitary Rag Company (the Rag Company). Three to four feet to the north of the line dividing the property was a low concrete bumper called a retaining wall. This wall ran parallel to the dividing line and was designed to prevent trucks present on Midwest's property from bumping into the Rag Company building, which was located two to five feet to the south of the dividing line.

Midwest acquired the property in 1954 and used it as a cartage terminal until 1983. Sometime after Midwest's formation, Harkrider, a licensed attorney, was appointed as the corporation's secretary.

In 1984, Harkrider, acting on behalf of Midwest, contacted plaintiff about demolishing structures and removing debris located on the property. The structures to be demolished included three one-story brick buildings: an office building with an area of 1,050 square feet; a 3,618-square-foot garage that was used for repairing trucks and trailers; and an 18,459-square-foot dock that was used to unload trucks and trailers. The office building had a wooden floor that was located at ground level. The garage and dock buildings had concrete floors; the garage floor was at ground level, while the dock floor was four feet above the ground.

After being contacted by Harkrider, Sheldon Mandell, plaintiff's president, visited the property with Harkrider and made an estimate of what the job would cost. Several months later, Harkrider contacted Mandell and asked that he submit a written proposal for the job.

The proposal, dated July 12, 1984, was prepared and signed by Allen Mandell, plaintiff's estimator. The proposal provided that, in consideration for $10,900, the buildings would be wrecked down to the tops of the concrete floors, the basement areas would be filled and graded level, and fuel storage tanks would be dug out and removed. The proposal also contained an "alternate No. 1" stating that for the additional sum of $10,800, the dock building would be removed down to the level of the adjacent grade.

At a July 17 meeting with Allen Mandell, Harkrider signed the proposal and wrote "Accepted RH" next to alternate No. 1. Also written on the proposal was the statement "Remove all trees east of dock bldg, miscellaneous debris on site and all fencing. Add the sum of $1000." This addition was initialled by both Mandell and Harkrider.

Plaintiff began work shortly after the proposal was signed. Work was concluded in early August. On November 8, 1984, after Midwest failed to respond to plaintiff's requests for payment, plaintiff filed a claim for a mechanics' lien with the Cook County recorder of deeds.

On January 14, 1985, plaintiff filed suit against Midwest in the circuit court. In count I of its complaint, plaintiff sought foreclosure of the mechanics' lien and a sale of the property to satisfy Midwest's debt. In count II, plaintiff charged Midwest with breach of contract, alleging that plaintiff had demolished and removed the structures from Midwest's property as required by the contract and that Midwest had failed to make the agreed-upon payments.

The complaint was verified by Sheldon Mandell and accompanied by an "Affidavit as to Unknown Owners." Service was made upon the Secretary of State as agent for Midwest and service on unknown owners was made by publication in the Chicago Daily Law Bulletin.

Midwest failed to respond and an order of default was entered against it on August 12, 1985. A prove up was conducted on August 27, 1985, and a decree of foreclosure and sale was entered.

On September 16, 1985, Harkrider, acting as Midwest's attorney, filed a motion to vacate the default decree. This motion was granted, and Midwest filed its answer and affirmative defenses to plaintiff's complaint, alleging that the proposal was too vague and ambiguous to constitute a contract and that the work performed by plaintiff was not the type to give rise to a mechanics' lien.

Midwest also filed a counterclaim in which it alleged that it and plaintiff agreed that Midwest would request the Chicago Sanitary Rag Company to remove debris it placed on Midwest's property, and if the Rag Company failed to remove the debris, plaintiff would do so and give Midwest a credit for any payment plaintiff received from the Rag Company. Midwest charged that this created a fiduciary relationship between it and plaintiff and that plaintiff breached its fiduciary duty to Midwest by entering into a "secret deal" with the Rag Company to remove the debris. Midwest charged that plaintiff's conduct also violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262 et seq.).

In January 1986, plaintiff filed a motion to disqualify Harkrider as counsel for Midwest, alleging that the contract at issue was negotiated and executed by Harkrider and that, therefore, it was likely that Harkrider would be called as a witness. Plaintiff's motion was denied as premature on March 10, 1986.

Subsequently, after extensive discovery, including the taking of Harkrider's deposition, plaintiff's motion was renewed and a hearing was set for December 1986. At that hearing, the trial court found that the case could not proceed without Harkrider being called as a witness and ordered that he be disqualified from representing Mid-

west. Subsequently, Paul Bargiel and Stephen Sadin entered appearances as attorneys for Midwest.

Midwest appealed the order of disqualification to this court. We found that the court's order was not final and appealable and remanded the cause to the circuit court for further proceedings. See *National Wrecking Co. v. Midwest Terminal Corp.* (1987), 164 Ill. App. 3d 621, 518 N.E.2d 193.

On April 9, 1987, Midwest filed a pleading entitled "Motion to Enjoin Law Firm Schwartz & Freeman and Lawyers in That Firm from Acting as Attorneys for National Wrecking Company in These Proceedings." In this motion, which consisted of 48 pages and 166 paragraphs, Midwest argued that plaintiff's lawyers were potential witnesses because of their conduct in causing the affidavit of Sheldon Mandell to be attached to the complaint and claim for lien, causing an affidavit of unknown owners to be filed when there were no such unknown owners, and causing the complaint and notice of prove up to be served on the Secretary of State when they knew that Harkrider was Midwest's secretary and attorney.

On May 20, 1987, following arguments by the parties, the trial court denied Midwest's motion, stating that the allegations it contained were collateral to the issues raised by the complaint and counterclaim. Midwest has filed a notice of appeal from this order.

In December 1987, plaintiff filed a motion for sanctions pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), alleging that statements in Midwest's pleadings, motions, and certain discovery papers were made for an improper purpose. Arguments on this motion were heard on February 2, 1988, and the matter was taken under advisement.

Trial began on March 25, 1988, and lasted four days. Witnesses included Allen and Sheldon Mandell and Raymond Harkrider.

On the second day of trial, Midwest filed a motion to amend its answer and counterclaim. The motion sought to add two paragraphs: the first alleged that plaintiff illegally trespassed on Midwest's property when it removed debris from the Rag Company property; the second alleged that plaintiff failed to give Midwest a contractor's sworn statement as required by section 5 of the Mechanics Lien Act (Ill. Rev. Stat. 1987, ch. 82, par. 5). The trial court denied leave to add the second paragraph and reserved its ruling on the first.

During the course of the trial, Allen Mandell testified that he met with Harkrider in July 1984 to review plaintiff's demolition proposal and to tour the site. At this meeting, the provision concerning removal of miscellaneous debris, trees, and fencing was added to the

proposal. Mandell testified that the term "miscellaneous debris" referred to items scattered about Midwest's property including broken pallets, the bottom of a trailer bed, and some tarpaper located north of the retaining wall. Mandell also testified that Harkrider informed him that the retaining wall represented the southern border of Midwest's property.

Allen Mandell further testified that while the work on Midwest's property was in progress, plaintiff was contacted by the Rag Company about removing debris located between the retaining wall and the Rag Company building. Mandell stated that three loads of debris were removed and that the Rag Company paid plaintiff $300 for each load. Mandell denied that he discussed the removal of the Rag Company debris with Harkrider or that Harkrider requested an invoice or a credit for the work done for the Rag Company.

Both Allen and Sheldon Mandell testified that the lot was clean and level when demolition was completed. However, on cross-examination both admitted that the foundation of the garage building protruded above the concrete floor. Sheldon Mandell testified that he measured this protuberance and found it was approximately one-half inch in height. Sheldon also testified that there were some broken bricks scattered about the site, but stated that the bricks were part of the "solid fill" used to fill in the basement areas. Both Allen and Sheldon denied that they were told by Harkrider that Midwest intended to use the property for a parking lot.

Harkrider's testimony disputed that of the Mandells. He stated that at the meeting with Allen Mandell he told Mandell that Midwest wanted the property prepared for use as a parking lot. Harkrider further testified that he told Mandell that he would ask the Rag Company to remove its debris and that if it refused to do so, plaintiff should remove the debris while it had the equipment at the site. According to Harkrider, Mandell agreed to remove debris for an additional $1,000 and promised to give Midwest a credit for this amount if the Rag Company removed the debris. Harkrider claimed that the handwritten provision inserted into the proposal referred to this agreement.

Harkrider testified that there was miscellaneous debris scattered over the lot, that he told Allen Mandell that plaintiff should be concerned with cleaning only that portion of the property north of the retaining wall, and that Midwest was not interested in having any portion of the property south of the retaining wall cleaned.

Harkrider also disputed Sheldon Mandell's claim that the foundation walls of the garage protruded only a half-inch above the concrete

floor slab. Harkrider did not measure the height of the walls; however, he testified that they appeared to be four or five inches above floor level. Harkrider took several photographs of the site, showing the walls and what he claimed was debris left on the property by plaintiff. These photographs, along with several photographs taken by Allen Mandell, were admitted into evidence.

At the close of evidence, Midwest renewed its motion to amend its answer and counterclaim, arguing that the proofs offered during trial provided support for its allegations of trespass. The court denied the motion, finding that there was no evidence of trespass and, therefore, no basis for an amendment to conform to the proofs.

On July 29, 1988, the trial court issued a memorandum opinion finding that the proposal constituted the complete agreement of the parties and that there was no agreement to prepare the property for use as a parking lot. The court found that plaintiff had substantially performed its part of the agreement and that the presence of bricks scattered on the property and plaintiff's failure to cut the garage wall foundations level to the concrete floor were *"de minimis."* The court concluded that Midwest was entitled to a setoff of $2,525 for these items.

The court dismissed Midwest's counterclaim, finding that there was no fiduciary relationship between plaintiff and Midwest and that there was no evidence of unfair or deceptive practices on the part of plaintiff. In addition, the court found that the term "miscellaneous debris," as used in the proposal, referred not to the debris in the area of the retaining wall, but to debris that was scattered over the balance of the lot. However, the court determined that Midwest was entitled to a credit for $300 of the $900 paid to plaintiff by the Rag Company.

At the same time it filed its memorandum opinion, the court issued an order granting plaintiff's section 2—611 motion for fees. The court found that Midwest's action in filing a motion objecting to plaintiff's affidavit of unknown owners and persisting in this objection throughout discovery, even after the court advised it that the affidavit was necessary, violated section 2—611.

The court also awarded sanctions in connection with certain of Harkrider's actions during the discovery process. The court held these actions were in violation of its orders outlining the extent to which Harkrider could participate in the proceedings after his disqualification. The court specifically referred to Harkrider's conduct at a September 1987 discovery meeting, describing it as "shameful and an abuse of the judicial process." The court further found that the sanc-

tions should be imposed against both Stephen Sadin and Harkrider, because of Sadin's failure to control his client.

Responding to the other allegations in plaintiff's sanction motion, the court found that some of the actions complained of could rise to a violation of section 2—611. However, the court declined to impose any additional sanctions, stating that it did not believe justice would be served by doing so. Plaintiff was ordered to submit a fee petition detailing its expenses in connection with the items found to be sanctionable.

On August 26, 1988, Midwest filed a notice of appeal from the court's 1987 order disqualifying Harkrider, the July 29 memorandum opinion, and the July 29 order granting plaintiff's motion for sanctions.

On August 30, plaintiff filed its petition for sanctions seeking a total of $10,198.80. On the same date, plaintiff also filed a supplemental motion for sanctions, seeking recovery for alleged misconduct by Midwest occurring after the original motion for sanctions was filed. In a petition in support of its supplemental motion, plaintiff requested $4,682.50 in attorney fees.

On November 23, 1988, following a hearing, the court granted part of plaintiff's supplemental motion for sanctions. The court found that Midwest violated section 2—611 in repeatedly asserting that motions must be verified and in repeatedly filing motions seeking to get plaintiff to specify which interrogatories were answered by Allen and Sheldon Mandell. The court held that Midwest, Harkrider, and Sadin shared liability for these violations and ordered them to pay plaintiff $1,901.40.

A hearing was held on December 15, 1988, in connection with plaintiff's original petition for sanctions, and on January 3, 1989, an order was entered awarding plaintiff $9,213.80 in sanctions. This order stated that the sanction award was made pursuant to both section 2—611 and Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)), and that Midwest, Harkrider, and Sadin were jointly and severally liable for paying the sum. Notices of appeal were filed from both awards.

The appeals from the May 20, 1987, order, the July 29, 1988, orders, the November 23, 1988, orders and the January 3, 1989, order have been consolidated in this court. We affirm in part and reverse in part.

■ Appellants' first arguments on appeal concern the trial court's order granting plaintiff's motion to disqualify Raymond Harkrider. Rule 5—101(b) of the Code of Professional Responsibility (107 Ill. 2d R. 5—101(b)) provides that a lawyer shall not accept em-

ployment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness unless his testimony will relate solely to an uncontested matter, his testimony will relate solely to a matter of formality and there will not be substantial testimony offered in opposition to it, his testimony will relate solely to the nature and value of legal services rendered, or it would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

■ In the present case, Harkrider and the Mandells were the only parties involved in the negotiation of the proposal. In its answer, affirmative defenses, and counterclaim, Midwest alleged the existence of agreements in addition to those set forth in the proposal and charged that plaintiff had breached these agreements. The only witness who could have testified for Midwest concerning these additional agreements was Harkrider. Accordingly, we find that the trial court properly concluded that Harkrider ought to be called as a witness, and we affirm the trial court's order of disqualification.

Appellants next argue the trial court erred in entering judgment for plaintiff under the doctrine of substantial performance. Appellants claim that plaintiff did not substantially perform its part of the contract because it failed to wreck the garage down to the concrete floor, it breached its promise to provide Midwest with an invoice and credit for removal of Rag Company debris, and it failed to remove the miscellaneous debris from the property.

■ Under the doctrine of substantial performance, a contractor may recover where there has been substantial performance of a contract even though there may be some omissions and defects in the contract's performance, as measured by the strict terms of the contract. (*Delta Construction, Inc. v. Dressler* (1978), 64 Ill. App. 3d 867, 381 N.E.2d 1023.) Substantial performance will be found where there is an honest and good-faith performance of the contract and no willful departure from or omission of the essential parts of a contract. (*Broncata v. Timbercrest Estates, Inc.* (1968), 100 Ill. App. 2d 49, 241 N.E.2d 569.) In the present case, we find that the trial court properly concluded that plaintiff had substantially performed its part of the contract.

■ Initially, we note that, despite appellants' claim to the contrary, the trial court did not find that plaintiff breached a promise to give Midwest credit for money paid by the Rag Company. Rather, the trial court allowed a credit for $300 of the amount paid to plaintiff by the Rag Company based on its finding that some of the Rag Company debris had spilled over onto Midwest's property and it would have

been difficult to determine what amount was on Midwest's property and what amount was on the Rag Company's property. In light of the fact that there was no finding of a promise to give an invoice or credit, the failure to do so does not support Midwest's claim that plaintiff did not substantially perform.

Midwest's contention that plaintiff failed to remove the miscellaneous debris scattered over the property is based on photographs in the record depicting two or three areas where rags, boards, and other items were present on the property and an area along the edge of the property where some bricks remained. Plaintiff's witnesses denied that the rags and boards were present when work was completed, and the trial court apparently found their testimony to be credible.

The trial court also found that the presence of the bricks along the edge of the property was *de minimis*. Giving consideration to the fact that the proposal called for the removal of three buildings and the clearing of a 62,000-square-foot lot, we must agree that the failure to remove a few bricks did not amount to a failure to perform on the part of the plaintiff.

We next consider Midwest's arguments that plaintiff did not substantially perform because it failed to completely remove the garage foundation walls.

■ Sheldon Mandell testified that the remaining walls measured one-half inch in height. Although Harkrider testified that the walls appeared to be four to five inches tall, he admitted that he never measured them. An expert called on behalf of Midwest testified that it would cost $8,300 and take two days and 12 loads to remove the walls and clear the site. However, his testimony was based on the condition of the site as it was at the time of trial, and included the cost of removing a substantial amount of debris that had been dumped on the property in the years between plaintiff's removal of the buildings and the trial.

In awarding the $2,525 setoff, the trial court found that the work could be done in one day and that plaintiff should not be responsible for the expense of clearing the site of debris that had been dumped there after it completed the project. We affirm. We find that the failure to remove all of the garage foundation walls does not amount to a departure from or omission of an essential part of the contract. We also find that the trial court's determination of the amount of the setoff is not contrary to the manifest weight of the evidence and, therefore, we see no reason to disturb it. See *Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410, 378 N.E.2d 328.

Appellants' next arguments concern the applicability of the Mechanics Lien Act (Act) (Ill. Rev. Stat. 1985, ch. 82, par. 1 *et seq.*). Appellants argue that plaintiff is not entitled to a mechanics' lien because the Act does not apply to demolition. This argument is entirely without merit.

■ In a 1980 amendment to the Act, the definition of persons entitled to a mechanics' lien was extended to include anyone who contracts to "remove any house or structure" from the subject property. (Ill. Rev. Stat. 1985, ch. 82, par. 1.) Thus, it is readily apparent that plaintiff is covered under the Act and any argument to the contrary is plainly nonsense.

Appellants also argue that plaintiff's failure to give Midwest a sworn contractor's statement, as required by section 5 of the Mechanics Lien Act (Ill. Rev. Stat. 1985, ch. 82, par. 5), bars it from recovering on its breach of contract claim. We cannot agree.

■ Appellants' argument is based on two cases in which the Second District of the Illinois Appellate Court held that a contractor's failure to give an owner a sworn statement pursuant to section 5 precluded the contractor from recovering for breach of contract. (*Malesa v. Royal Harbour Management Corp.* (1989), 187 Ill. App. 3d 655, 543 N.E.2d 591; *Ambrose v. Biggs* (1987), 156 Ill. App. 3d 515, 509 N.E.2d 614.) These cases directly conflict with this court's decision in *Hall v. Harris* (1926), 242 Ill. App. 315, where we held that a contractor's failure to provide a sworn statement would not prevent him from suing to recover under the contract.

Appellants argue that *Hall* is no longer applicable because of later amendments to section 5. We disagree.

The legislature is presumed to be aware of the construction given to a statute by the courts of this State. (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.) When the legislature amends or reenacts a statute which has been the subject of judicial interpretation and leaves unchanged portions of the statute that have been judicially construed, there is a strong presumption that the legislature intended to adopt the previous judicial construction of the unamended language. *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319; *Hupp v. Gray*, 73 Ill. 2d at 86.

In the present case, section 5 of the Mechanics Lien Act was amended to add the requirement that contracts include language concerning the necessity of a sworn statement requirement. The original portion of the statute was unchanged and nothing in the amendments indicates any intent on the part of the legislature to bar contract actions for failure to include this language or for failure to give a

sworn statement pursuant to section 5. Moreover, it is undisputed that the failure to provide a sworn statement does not bar a mechanics' lien claim (see, *e.g., Gillespie v. Patrick* (1909), 146 Ill. App. 290; *Rawle v. Gilmore* (1898), 76 Ill. App. 372 (holding that the requirement to provide a sworn statement can be waived)); and we find no basis for concluding that by amending section 5, the legislature intended a different result with respect to contract claims. Accordingly, we find that under our earlier decision in *Hall,* plaintiff's failure to provide a sworn statement pursuant to section 5 does not bar its recovery for breach of contract.

Appellants next argue that the trial court erred in dismissing Midwest's counterclaim, in denying Midwest's motion to amend its counterclaim, and in dismissing Midwest's motion to enjoin plaintiff's attorneys. We find no error.

■ In its counterclaim, Midwest charged plaintiff with common law fraud and a violation of the Consumer Fraud and Deceptive Business Practices Act (CFA). Midwest alleged that plaintiff agreed to give Midwest a credit for payments received for the removal of Rag Company debris from Midwest's property, that this agreement created a fiduciary relationship between plaintiff and Midwest, that Midwest entered into a secret deal with the Rag Company in violation of this fiduciary relationship, and that plaintiff never intended to perform its agreement to give Midwest credit for amounts it received from the Rag Company. Midwest argues that these allegations support a finding of common law fraud and a violation of the CFA.

In disposing of Midwest's common law fraud claim, we need only point out that the failure to perform a contractual promise, even when the promise is made with an intent not to perform, does not constitute common law fraud. (*Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657.) Therefore, Midwest's common law fraud claim was properly dismissed.

Turning to Midwest's CFA claim, we note that Midwest again contends that the trial court found that plaintiff agreed to give Midwest a credit for amounts paid by the Rag Company. This contention is plainly untrue.

■ The trial court found only that the parties agreed that plaintiff would contact the Rag Company about removing the debris and that if the Rag Company refused to do so, National was to remove the debris and advise Midwest of the amount of money this removal entailed. Nowhere in its findings did the trial court conclude that the parties agreed that Midwest would get a credit against the contract

price for amounts the Rag Company paid plaintiff, and we find no basis for inferring such a conclusion.

The question of whether there was an agreement to give a credit clearly turns on the credibility of the witnesses: the Mandells testified that there was no agreement; Harkrider testified that there was. In refusing to find that the parties agreed to a credit, the trial court apparently discounted Harkrider's testimony. This was well within the trial court's discretion. *In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 441 N.E.2d 1277; *Northbrook Trust & Savings v. County of Cook* (1977), 47 Ill. App. 3d 879, 365 N.E.2d 433.

In addition, the trial court's express finding that the proposal constituted the complete agreement of the parties effectively defeats Midwest's claim that plaintiff violated the CFA by agreeing to give Midwest a credit while intending not to do so. Accordingly, Midwest's CFA counterclaim was properly dismissed.

We also find that the trial court acted properly in denying Midwest's motion to amend its counterclaim to allege trespass by plaintiff. Midwest's trespass claim was based on plaintiff's use of Midwest's property to remove Rag Company debris from between the retaining wall and the Rag Company building.

■■ Trespass is defined as the unauthorized entry on the land of another. (*Checkley v. Illinois Central R.R. Co.* (1913), 257 Ill. 491, 100 N.E. 942.) In the present case, the trial court's finding that there was no evidence of trespass was based on Harkrider's testimony that he instructed plaintiff to remove the Rag Company debris while plaintiff had its equipment at the site. The trial court concluded that there could be no trespass since Harkrider specifically instructed plaintiff to go onto Midwest's property to clean up the area in question. We agree with the court's conclusion, and we affirm its denial of Midwest's motion to amend.

We next consider appellants' claim that the trial court erred in dismissing Midwest's motion to enjoin plaintiff's attorneys. From their briefs on appeal, it appears that Midwest's claim is based only on paragraph 162 of the motion, which contains an allegation that the actions of plaintiff's attorneys violated section 2—611. Midwest argues that this "request for sanctions" should not have been denied without a hearing.

■■ In its brief on appeal, Midwest claims that its request for fees is based on the conduct of plaintiff's attorneys in serving process on the Secretary of State as agent for Midwest in an attempt to obtain a default decree of foreclosure against Midwest without its knowledge of participation. We agree that plaintiff acted improperly

in serving process on the Secretary of State. Section 13 of the Business Corporation Act of 1933 (Ill. Rev. Stat. 1983, ch. 32, par. 157.13) provides that whenever a corporation's registered agent cannot with reasonable diligence be found at its registered office in this State, the Secretary of State is the irrevocable agent for service of process for that corporation. Here, plaintiff had been corresponding with Harkrider, the secretary of Midwest, and Sue Benson, the president of the company. Either of these officers could have been properly served as agent for Midwest. A minimal amount of diligence, such as a cursory review of company records, would have revealed the appropriate mailing address. Under these circumstances, service upon the Secretary of State was improper. Because the propriety of service was not challenged in the trial court, the defendant waived any objections to service by filing a general appearance and answering plaintiff's complaint.

Midwest filed a motion entitled "Motion to Enjoin Law Firm Schwartz & Freeman and Lawyers in that Firm From Acting as Attorneys for National Wrecking Company in These Proceedings." It consisted of 48 pages and 166 numbered paragraphs. Paragraph 162 contained the following statement:

"By reason of above-mentioned untrue allegations and representations and other improper conduct Midwest has and asserts various claims against [plaintiff] and its attorneys including claims for damages both compensatory and punitive claims for costs and expenses of litigation including attorney fees and claims under section 2—611 of the Code of Civil Procedure as recently amended."

Although the word "sanctions" is not mentioned, the reference made to section 2—611 clearly indicates an intent by the defendants to seek costs and expenses for sanctionable misconduct. For example, defendants incurred expenses as a result of plaintiff's improper service upon the Secretary of State, when service could have been made directly upon Harkrider, the secretary of Midwest, with whom the plaintiffs had been corresponding. Therefore, we remand this case for a sanctions hearing, wherein the defendants may be allowed to present evidence in support of their request for sanctions insofar as it relates to improper service.

Appellants' final arguments on appeal challenge the propriety of the trial court's orders awarding sanctions to plaintiff. In its January 3, 1989, order, entered pursuant to plaintiff's original motion, the trial court awarded plaintiff $2,196.40 in connection with Midwest's motion objecting to plaintiff's affidavit of unknown owners; $1,320 in

connection with appellants' behavior during discovery; and $5,697.40 for fees incurred in preparing the motion for sanctions.

▌ In seeking reversal of this award, appellants first contend that the objections to the affidavit of unknown owners were well grounded in fact and, therefore, will not support a section 2—611 award of sanction. We disagree.

Under section 11 of the Mechanics Lien Act, all parties with any interest in property subject to a mechanics' lien are necessary parties to a proceeding to foreclose the lien. (*Anderson v. Gousset* (1965), 60 Ill. App. 2d 309, 208 N.E.2d 37.) The failure to include a necessary party will defeat the lien. (*Kleinschnittger v. Dorsey* (1910), 152 Ill. App. 598.) To avoid this result, plaintiffs in an action to foreclose a mechanics' lien are advised to file an affidavit of unknown owners. Despite the trial court's repeated statements to this effect, Midwest persisted in asserting objections to the affidavit.

Section 2—611 (now Supreme Court Rule 137) provides that "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, *** and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Ill. Rev. Stat. 1989, ch. 110, par. 2—611.) We believe the record amply supports a conclusion that Midwest's objections to the affidavit were interposed for the improper purpose of delay and harassment and, therefore, we affirm the trial court's imposition of sanctions in connection therewith.

▌ Appellants also argue that the trial court erred in awarding sanctions in connection with Harkrider's conduct at the September 1987 discovery meeting because the conduct did not involve an allegation or denial in a written pleading as required by section 2—611. Appellants further argue that sanctions were not warranted because the meeting was conducted in an orderly manner and because they complied with plaintiff's discovery request in a sensible and acceptable fashion.

Appellants' contentions concerning the manner in which the meeting was conducted are belied by the transcript of the September 1987 meeting. A review of this transcript indicates that the trial court was entirely justified in finding that appellants' conduct at the meeting was designed to waste time and abuse the discovery process.

▌ As for appellants' argument that Harkrider's conduct was not subject to sanctions under section 2—611, we note that the trial court's award of sanctions was made pursuant to both section 2—611 and Su-

preme Court Rule 219. Supreme Court Rule 219 specifically authorizes sanctions for a party's abuse of discovery procedures and failure to comply with court orders or rules regarding discovery. A court's order awarding fees pursuant to Supreme Court Rule 219(c) is a matter of discretion and will not be disturbed absent an abuse of that discretion. (*Van Hyning v. Hyk* (1979), 78 Ill. App. 3d 721, 397 N.E.2d 566.) In the present case, we find no abuse of discretion in the trial court's decision to award sanctions under Rule 219(c).

■■■ We do, however, find an abuse of discretion by the trial court in awarding $5,697.40 for fees incurred by plaintiff in preparing its motion for sanctions. A court may order an offending party to pay "reasonable expenses" incurred as a result of violations of the provisions of section 2—611. In *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945, this court held that common sense required a finding that the term "reasonable expenses," as used in section 2—611, included the fees and expenses incurred for work performed in prosecuting the request for sanctions. However, we do not find this amount to be "reasonable," and, therefore, we reduce this part of the sanctions award to $1,500 based on an examination of the record.

■■■ Appellants next argue that the trial court erred in granting plaintiff's supplemental motion for section 2—611 sanctions. In its supplemental motion, plaintiff sought fees for: (1) Harkrider's conduct at a discovery meeting held in February 1988; (2) Midwest's filing of a response to plaintiff's original motion for sanctions in which Midwest described a number of plaintiff's motions as "unverified," despite the fact that the motions in question were not required to be verified; and (3) Midwest's filing of a third motion to compel requesting that plaintiff identify which interrogatories were answered by Allen Mandell and which were answered by Sheldon Mandell.

Although the trial court refused to order sanctions for Harkrider's conduct at the February 1988 meeting, it awarded plaintiff $250 in connection with Midwest's motion to compel and $250 in connection with the response to plaintiff's original motion for sanctions. The court also awarded plaintiff $1,401.40 for fees incurred in preparing its supplemental motion for sanctions. We agree that these awards were improper.

Prior to filing its third motion to compel, Midwest had attempted on two previous occasions to determine which answers Mandell had provided to its interrogatories. In response, the trial court entered orders requiring plaintiff to file a supplemental answer identifying those interrogatories answered by Sheldon and those answered by Allen. Plaintiff filed an answer stating that both Sheldon and Allen Mandell had provided information in answer to Midwest's interrogatories.

In its third motion to compel, Midwest argued that the answer was nonresponsive and again requested that plaintiff identify who answered what questions. At a hearing on this motion, the trial court agreed that Midwest was entitled to know who answered which interrogatories. In light of this motion, we conclude that it was an abuse of discretion to award sanctions for Midwest's filing of the motion.

We also conclude that the court abused its discretion in awarding sanctions in connection with the references to plaintiff's unverified filings contained in Midwest's response to plaintiff's original motion for sanctions. Accordingly, we reverse both awards of $250 and the award of $1,401.40 for fees incurred in preparing the supplemental petition.

In their final argument on appeal, appellants contend that the trial court's order imposing sanctions against Harkrider must be reversed. Appellants argue that Harkrider is not amenable to sanctions because he did not sign any papers either as a party or a lawyer. We disagree.

In its order awarding sanctions under plaintiff's original motion, the trial court stated that the award was made pursuant to both section 2—611 and Supreme Court Rule 219. Unlike section 2—611, Rule 219 does not limit imposition of sanctions only to parties or their attorneys. (See *Profesco Corp. v. Dehm* (1990), 196 Ill. App. 3d 127, 553 N.E.2d 101.) Accordingly, we find no reason to disturb that portion of the trial court's order finding that Midwest, Harkrider, and Sadin were jointly and severally liable for payment of the sanctions award.

In conclusion, we affirm the trial court's order disqualifying Harkrider from representing Midwest and the trial court's judgment in favor of plaintiff. We also affirm the trial court's dismissal of Midwest's counterclaim; its denial of Midwest's motion to amend the counterclaim; and we remand for a hearing on Midwest's request for sanctions. Finally, we affirm the award of sanctions under plaintiff's original motion, but we reduce the dollar amount of the sanctions award which relates to costs incurred in the preparation of plaintiff's sanctions motion. In addition, we reverse the award made under plaintiff's supplemental motion.

Judgment affirmed in part; reversed in part and remanded in part.

GREIMAN, P.J., and RIZZI, J., concur.