# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505

---

| | |
|---|---|
| Appellate Court Caption | ALICE E. DOLAN and JOEL F. HANDLER, Plaintiffs-Appellees, v. JOSEPH MICHAEL O'CALLAGHAN, Defendant-Appellant (Alice E. Dolan, Plaintiff; Joseph Michael O'Callaghan, P.C., n/k/a West Monroe Law Office, P.C., Defendant). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-11-1505, 1-12-0918 cons. |
| Filed<br>Rehearing denied | September 28, 2012<br>November 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not abuse its discretion by sanctioning defendant for the delays he caused in bringing to trial plaintiff's action alleging a breach of contract arising from her work as an associate in defendant's law firm, including delays in discovery, since the trial court had authority under Supreme Court Rule 219 and its inherent authority to impose attorney fees. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-749; the Hon. Allen S. Goldberg and the Hon. John C. Griffin, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert G. Grossman, of Chicago, for appellant.<br><br>Joel F. Handler, of Chicago, for appellees. |

JUSTICE PALMER delivered the judgment of the court, with opinion. Justices Garcia and Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1      Appellant, Joseph Michael O'Callaghan, appeals from three orders entered by the circuit court of Cook County. The first order, entered on February 11, 2010, granted plaintiff Alice Dolan sanctions against O'Callaghan pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002) for refusing to answer certain questions at his deposition and specifically required O'Callaghan to pay the attorney fees Dolan's counsel incurred in connection with preparing the motion for sanctions. The second order, dated July 6, 2010, entered a specific amount of attorney fees on the court's February 11, 2010, order and required O'Callaghan to pay attorney fees in the amount of $4,781.25. The third order, entered on May 2, 2011, entered additional sanctions against O'Callaghan pursuant to Supreme Court Rule 219 for refusing to answer certain questions at his deposition and specifically required O'Callaghan to pay additional attorney fees in the amount of $4,165.

¶ 2      On appeal, O'Callaghan challenges the propriety of all three orders. In addition, O'Callaghan and Dolan have each filed a motion which was taken with the case. O'Callaghan filed a "dispositive motion pursuant to Rule 361(2)(H)" requesting an order vacating the circuit court's orders as void for lack of personal jurisdiction without the necessity of briefing all of the issues involved in this case. Dolan filed a motion to dismiss the appeal for lack of jurisdiction.

¶ 3      For the reasons that follow, we deny Dolan's motion to dismiss and O'Callaghan's motion to vacate and we affirm the judgment of the circuit court of Cook County.

¶ 4                             BACKGROUND

¶ 5      The circuit court's orders imposing sanctions against O'Callaghan arise from an underlying lawsuit between Dolan and defendant, Joseph Michael O'Callaghan, P.C., now known as West Monroe Law Office, P.C. (hereinafter, defendant). Dolan's original and amended complaint asserted a claim for breach of contract against defendant and Joseph Michael O'Callaghan individually. Those complaints alleged that Dolan, an attorney, worked as an associate for defendant from 1981 to 1984. In 1982, Dolan and O'Callaghan memorialized an agreement in an office memorandum in which Dolan agreed to accept a percentage of all fees of defendant in lieu of a salary. The complaint alleged that O'Callaghan ultimately breached that agreement. Dolan's amended complaint was dismissed by the circuit court of Cook County pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)). However, this court reversed that judgment. See *Dolan v. O'Callaghan*, No. 1-95-0438 (1996) (unpublished order pursuant to Supreme Court Rule 23). As part of discovery in that case, O'Callaghan was deposed in October of 1997 and February of 1999.

¶ 6      In 2000, the circuit court entered summary judgment in O'Callaghan's favor and

dismissed him individually from the lawsuit. Dolan voluntarily dismissed the lawsuit on a later date and subsequently filed a second amended complaint against defendant, asserting claims for breach of contract and fiduciary duty. This complaint did not name O'Callaghan as an individual defendant.

¶ 7       The record indicates that O'Callaghan was deposed as a witness on October 9, 2006.[1] On August 20, 2007, the circuit court entered an order requiring O'Callaghan to again appear for his deposition by September 28, 2007, and ordering him to "produce the requested documents."

¶ 8       On January 9, 2008, Dolan filed a motion "to compel production of documents and to resume deposition of Joseph Michael O'Callaghan." That motion stated that despite the court's order that O'Callaghan appear for his deposition by September 28, 2007, the deposition did not resume until October 26, 2007. During the resumed deposition, O'Callaghan did not produce all of the requested documents and also refused to answer certain questions regarding O'Callaghan's new law firm, O'Callaghan & Colleagues, P.C. (Colleagues, P.C.). The motion alleged that during the deposition, O'Callaghan took an "exorbitant amount of time" answering certain questions and that his attorney would not let counsel for Dolan complete the deposition. Dolan requested that O'Callaghan's deposition be resumed because information was needed on Colleagues, P.C., which Dolan believed was related to the firm Joseph Michael O'Callaghan, P.C., now known as West Monroe Law Office, P.C., and into which Dolan believed that O'Callaghan had transferred whatever assets existed in West Monroe Law Office, P.C. The motion alleged that Dolan's attorney had contacted O'Callaghan's attorney to request that O'Callaghan's deposition be reopened and that O'Callaghan's attorney indicated that O'Callaghan would not voluntarily appear to resume his deposition. The motion requested that defendant produce specific financial records of Colleagues, P.C., and documents concerning O'Callaghan's dealings with Dolan. The motion claimed that O'Callaghan had given inconsistent responses in his depositions on October 9, 2006, and on October 26, 2007, as to whether defendant maintained a personnel file on Dolan. The motion also claimed that whether O'Callaghan was a party to the case was irrelevant because he was defendant's president and majority shareholder and maintained all of the documents being sought by Dolan. The motion further claimed that O'Callaghan's deposition had to be reopened due to statements made during the deposition of "Edward Fitzsimons," who owned one share of Joseph Michael O'Callaghan, P.C. Fitzsimons allegedly produced relevant documents at his deposition and testified that he sent those documents to O'Callaghan prior to his deposition. Attached to the motion were excerpts from O'Callaghan's October 26, 2007, deposition in which he refused to answer questions regarding Colleagues, P.C., on the basis of relevancy and because he was not an individual party to the lawsuit. Also attached were records from the Illinois Secretary of State indicating that defendant and Colleagues, P.C., occupied the same location and had the same president and agent, Joseph Michael O'Callaghan.

---

[1]There is no indication in the record as to the circumstances under which O'Callaghan initially came to be deposed.

-3-

¶ 9     Defendant responded to the motion to compel and to resume O'Callaghan's deposition by asserting that the circuit court previously allowed Dolan to depose O'Callaghan and that the deposition commenced on October 9, 2006, for approximately one hour. The deposition was continued but Dolan's counsel failed to attend that session. The deposition was then continued on October 26, 2007, and proceeded for approximately two hours. Defendant claimed that Dolan had twice the amount of time allotted by the supreme court rules to depose O'Callaghan and that Dolan should not be allowed additional time to continue to depose O'Callaghan, who was only a witness and not a party to the lawsuit.

¶ 10    On May 5, 2008, the circuit court set a hearing date on Dolan's motion to compel. However, there is no transcript of that hearing contained in the record on appeal. Nevertheless, on July 3, 2008, the court entered an order granting the motion to compel. The court ordered defendant to tender the requested documents to O'Callaghan's attorney for purposes of removing privileged documents and to thereafter allow Dolan's counsel to inspect the documents. The court further order O'Callaghan to appear to resume and complete his deposition so that he could be questioned on the following subjects: (1) the documents produced pursuant to the court's order; (2) documents concerning defendant's clients at the time Dolan was employed by it; (3) documents produced at the deposition of Edward Fitzsimons; (4) information concerning Colleagues, P.C.; and (5) defendant's income tax records for specified years. The order finally provided that O'Callaghan's deposition would proceed for two hours.

¶ 11    On March 30, 2009, Dolan filed a motion to compel and for sanctions against defendant based upon defendant's failure to produce, among other things, documents relating to Colleagues, P.C. Dolan claimed that pursuant to the court's July 3, 2008, order, she needed these documents in order to question O'Callaghan about them at his resumed deposition. On July 20, 2009, the circuit court entered an order requiring defendant to produce certain documents requested by Dolan. On August 6, 2009, O'Callaghan submitted an affidavit attesting that he was defendant's president, that he had searched defendant's records and that defendant had either previously produced the requested documents or was unable to locate certain documents.

¶ 12    On August 12, 2009, the court ordered defendant to submit another affidavit indicating that O'Callaghan & Colleagues never received money from persons or entities who were defendant's clients during the fiscal years of 1982 and 1983 and to identify all bank accounts into which defendant deposited money from cases in 1982 and 1983. The court also ordered O'Callaghan to appear by October 8, 2009, to resume his deposition. In response to the court's order, O'Callaghan submitted an affidavit attesting that O'Callaghan & Colleagues did not exist in 1982 and 1983 and therefore did not receive money from clients of the corporation formerly known as Joseph Michael O'Callaghan, P.C. He also stated that there were no records that identified the bank accounts into which funds from clients of defendant were deposited during 1982 and 1983.

¶ 13    On November 4, 2009, Dolan filed a motion for sanctions against O'Callaghan pursuant to Illinois Supreme Court Rules 201 and 219 (eff. July 1, 2002) for his "deliberate and willful violation" of the court's July 3, 2008, order by refusing to answer questions concerning Colleagues, P.C. The motion alleged that after numerous continuances by defendant,

O'Callaghan's deposition had resumed on October 9, 2009. During that deposition, Dolan's counsel inquired about Colleagues, P.C., but, despite the court's order, O'Callaghan refused to answer those questions. The questions included whether O'Callaghan operated under the name of Colleagues, P.C., since November 1997 and who were the shareholders and employees of Colleagues, P.C. The motion asked the court to sanction O'Callaghan by barring him from testifying at trial and requiring him to pay Dolan's attorney fees incurred in connection with the motion for sanctions. The proof of service attached to the motion states that the motion was served on "Robert Grossman," counsel for defendant.

¶ 14    Attached to the motion were excerpts from O'Callaghan's October 9, 2009, deposition. Those excerpts reveal that O'Callaghan refused to answer questions regarding Colleagues, P.C., on the ground that he was appearing at the deposition only as defendant's corporate representative. For example, Dolan's counsel asked O'Callaghan if he had ever personally furnished any financial documents to Dolan, and O'Callaghan replied that he "was not a defendant in the lawsuit" and was only at the deposition "as the representative of the corporation." Counsel asked O'Callaghan if he had operated under the corporate name of Colleagues, P.C., since November 1997, to which O'Callaghan replied that he was "not here to answer that question." When asked to identify the employees or shareholders of Colleagues, P.C., he replied that "as the representative of Joseph Michael O'Callaghan, P.C., and *** Colleagues, P.C., and West Monroe Law Office, I'm not in a position to know that information." Reminded by Dolan's counsel that he had been ordered by the court to answer that question and others relating to Colleagues, P.C., O'Callaghan replied "in my capacity as the witness here, I can't answer that question" and stated that he refused to answer the question regarding the employees of Colleagues, P.C. O'Callaghan invoked his alleged corporate status in response to numerous other questions regarding Colleagues, P.C., and stated that he was refusing to answer those questions "in compliance with Judge Goldberg's order."

¶ 15    Defendant filed a response to the motion, arguing that there was no relevant basis to pursue discovery regarding Colleagues, P.C., and that there was no basis to sanction O'Callaghan under Supreme Court Rule 219. Defendant pointed out that at a conference, the court indicated that whether defendant had transferred assets to Colleagues, P.C., might be a legitimate area of inquiry, and it argued that during his deposition and in his affidavits, O'Callaghan had made it clear that there was no relationship between the two firms and that no money had been transferred from the corporation Joseph Michael O'Callaghan, P.C., now known as West Monroe Law Offices, P.C., to Colleagues, P.C. Defendant also argued that the court's order compelling O'Callaghan to answer certain questions was impermissibly vague, that Dolan was improperly seeking sanctions to punish O'Callaghan and that attorney-client privilege prohibited O'Callaghan from answering questions regarding Colleagues, P.C.

¶ 16    On February 11, 2010, the court entered an order granting Dolan's motion for sanctions.[2]

_____

[2]That order states that it was entered after the court "reviewed the parties' submissions" and "heard arguments of counsel." No transcript of arguments on the motion for sanctions is included in the record.

The court ordered O'Callaghan to appear to resume his deposition by March 4, 2010, at which Dolan was allowed to inquire "as to the questions that Mr. O'Callaghan refused [and] did not answer plus any follow-up questions." The order further provided that "assuming Mr. O'Callaghan refuses to answer the questions at the resumption of his deposition, the sanctions entered by this court will escalate and Mr. O'Callaghan will be barred from further testifying in this case." Finally, the order stated that "pursuant to Supreme Court Rule 219(c)," O'Callaghan was ordered to pay the attorney fees of Dolan's counsel that were incurred in preparing all documents related to the motion for sanctions. Dolan thereafter filed a petition for attorney fees in which she set forth a specific amount of attorney fees she incurred in connection with the motion for sanctions. Attached to the petition was an affidavit from Dolan's counsel, Joel Handler, in which he itemized the time he spent on the motion and the amount he billed Dolan for that time.

¶ 17    On March 15, 2010, O'Callaghan filed a motion for leave to file a special and limited appearance and a *pro se* motion to quash the court's February 11, 2010, order imposing sanctions against him. In his *pro se* motion to quash, O'Callaghan argued that he was not a party to the action, that he had not been subpoenaed as a witness but instead appeared for his deposition only in the capacity of a corporate representative of defendant and that he was not served with notice of the motion for sanctions. Accordingly, he argued, Dolan never took the necessary steps to obtain the court's jurisdiction over him. In a supporting memorandum, O'Callaghan argued that the purpose of Supreme Court Rule 219 was to compel compliance with discovery and that he had fully complied with the court's discovery orders.

¶ 18    On March 16, 2010, defendant filed a motion to vacate the court's February 11, 2010, order imposing sanctions "in favor of Joel Handler." The motion stated that after the court set a briefing schedule on the amount of attorney fees to be awarded, defendant submitted a discovery request seeking information regarding his attorney fees in order to respond to the fee petition and that Handler had refused to provide this information. Defendant claimed that it could not respond to the fee petition without this information and requested that the court vacate its prior order insofar as it related to an award of sanctions to Handler.

¶ 19    On July 6, 2010, the court set the case for trial, closed discovery and allowed Dolan to file an amended petition for attorney fees. Also on that date, the court entered a memorandum opinion and order in which it found that O'Callaghan's motion to quash was improper because it did not attack the reasonableness of the petition for attorney fees but instead "simply restat[ed] the arguments previously brought by defendants which led to sanctions, and even attempt[ed] to assert new [arguments] as [a] basis to reverse" the court's order for sanctions. The court noted that "it would have been proper to raise these arguments in a motion to reconsider." Accordingly, the court found that O'Callaghan had not demonstrated a sufficient basis for a motion to quash and denied the motion. With regard to defendant's motion to vacate and to deny sanctions, the court found that the motion did not address the petition for attorney fees and that defendant's request for production to Handler was overbroad and did not demonstrate why Handler's billing rate in other cases was relevant to the case at bar. The court also found that the rate Handler charged was reasonable and awarded Dolan attorney fees in the amount of $4,781.25.

¶ 20    On July 9, 2010, Dolan filed a petition for additional attorney fees in the amount of

$4,165. The motion alleged that those additional fees had been incurred in connection with the motion for sanctions and included an affidavit from Handler itemizing the additional fees.

¶ 21 On August 4, 2010, O'Callaghan filed a *pro se* "motion for rehearing, to vacate and response to petitions for attorney fees." The motion was made pursuant to sections 2-301, 2-1401 and 2-1203 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-301, 2-1401, 2-1203 (West 2010)) and asked the circuit court to vacate its July 6, 2010, order denying O'Callaghan's motion to quash the court's order entered on February 11, 2010. O'Callaghan argued that the order of February 11, 2010, was void for lack of personal jurisdiction. O'Callaghan also responded to Dolan's petitions for attorney fees.

¶ 22 On May 3, 2011, the circuit court entered an order granting Dolan's petition for additional attorney fees and imposing additional sanctions against O'Callaghan in the amount of $4,165. The court also denied O'Callaghan's motions for a rehearing and to vacate the court's July 6, 2010, order imposing sanctions against him. The court further denied O'Callaghan's motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 23 On May 26, 2011, O'Callaghan filed a notice of appeal from the court's sanction orders pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008). That notice of appeal was docketed under number 1-11-1505. On June 30, 2011, Dolan filed in this court a motion to dismiss the appeal for lack of jurisdiction. On August 16, 2011, O'Callaghan filed a "dispositive motion pursuant to [R]ule 361(2)(h)," seeking an order finding the circuit court's orders imposing sanctions were void for lack of personal jurisdiction. In an order dated September 6, 2011, this court denied O'Callaghan's motion but, on November 14, vacated that order and took the issue of voidness with the case.

¶ 24 On November 23, 2011, O'Callaghan sought leave to amend his notice of appeal to add Illinois Supreme Court Rules 304(b)(3) and (b)(5) (eff. Feb. 26, 2010). On December 8, 2011, this court denied O'Callaghan's motion to amend his notice of appeal.

¶ 25 O'Callaghan filed another notice of appeal on April 3, 2012. The notice recited that Dolan had voluntarily dismissed her underlying case with prejudice on April 2, 2012, and that O'Callaghan was appealing under Supreme Court Rule 303(a)(2) from the circuit court's sanction orders. O'Callaghan asked that those orders be reversed on the ground that the circuit court did not have jurisdiction to enter them or that the entry of those orders was an abuse of the circuit court's discretion. The notice of appeal was docketed under number 1-12-0918.

¶ 26 On April 11, 2012, O'Callaghan filed a motion to consolidate the appeals under docket numbers 1-11-1505 and 1-12-0918. That motion was accompanied by a supplemental record containing an agreed order dated April 2, 2012. The order dismissed count II of Dolan's second amended complaint with prejudice and recited that judgment had been entered on count I of the second amended complaint on May 26, 2011. This court granted the motion to consolidate the two appeals and ordered that no further briefing was required or permitted.

¶ 27                                                    ANALYSIS

¶ 28 In her motion to dismiss appeal 1-11-1505, Dolan contends that this court lacks

jurisdiction because the circuit court's orders were not "final orders" and because O'Callaghan's notice of appeal does not seek leave to appeal on an interlocutory basis pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Feb. 26, 2010). Dolan further contends that O'Callaghan's notice of appeal is insufficient because it seeks to invoke jurisdiction pursuant to Supreme Court Rule 303, which deals only with the procedures that must be followed when an appeal is taken pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 29    Even if Dolan is correct that Rule 303 does not provide jurisdiction, O'Callaghan's citation to the wrong rule in his notice of appeal does not deprive this court of jurisdiction. In *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 210-11 (1996), our supreme court considered a notice of appeal filed in the appellate court that invoked Rule 301 as a jurisdictional basis. The court found that the only jurisdictional basis in that case was Rule 304(a) but that the notice of appeal was nevertheless sufficient to invoke the appellate court's jurisdiction. *O'Banner*, 173 Ill. 2d at 211. The court reasoned:

> "Although O'Banner's notice of appeal invoked Rule 301 rather than Rule 304(a), that mistake is of no consequence. Nothing in our rules requires a notice of appeal to even mention whether review is sought under Rule 301 or 304(a). What is important is that the notice specify 'the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court' (155 Ill. 2d R. 303(b)(2)) so that the successful party is advised of the nature of the appeal [citation]. There is no question that this requirement was satisfied here. Accordingly, O'Banner's citation to the wrong rule was nothing more than harmless surplusage. His notice of appeal was sufficient to invoke the appellate court's jurisdiction." *O'Banner*, 173 Ill. 2d at 211.

¶ 30    In this case, O'Callaghan's notice of appeal clearly specifies that the appeal is taken from the circuit court's orders imposing sanctions against him and asks this court to reverse those orders. The notice of appeal therefore satisfies the requirement of Illinois Supreme Court Rule 303(b)(2) (eff. May 30, 2008) because it specifies the judgment appealed from and relief sought and advises Dolan of the nature of the appeal.

¶ 31    The relevant question in this case is not whether O'Callaghan invoked the correct rule in his notice of appeal. Instead, the question is whether there is a rule that provides this court with jurisdiction over the appeal. For the reasons that follow, we find that Supreme Court Rule 301 provides jurisdiction to consider O'Callaghan's appeal.

¶ 32    Article VI, section 6, of the 1970 Illinois Constitution provides that "[a]ppeals from final judgments of a Circuit Court are a matter of right to the Appellate Court." Ill. Const. 1970, art. VI, § 6. The constitution also vests our supreme court with the authority to make rules governing appeals, including rules for appeals to the appellate court from nonfinal judgments. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981) (citing Ill. Const. 1970, art. VI, §§ 6, 16). Pursuant to this authority, our supreme court has promulgated rules governing appeals from final judgments under Rules 301, 302, 303 and 304. "Rules 301 and 304 provide the jurisdictional basis for appealing final judgments, while Rule 303 provides the guidelines for effectuating such appeals." *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 921 (1999).

¶ 33     We initially note that O'Callaghan filed two notices of appeal that were ultimately consolidated. The first notice of appeal was filed on May 26, 2011, and was docketed under number 1-11-1505. That notice of appeal was filed after the last sanction order was entered by the circuit court but prior to the conclusion of the underlying lawsuit. O'Callaghan filed a second notice of appeal on April 3, 2012, that was docketed under number 1-12-0918. That notice of appeal was filed after the entry of the agreed order voluntarily dismissing the last remaining count in the underlying lawsuit. For the reasons that follow, we conclude that the first notice of appeal was premature in that the sanction orders were discovery orders that were not final judgments and were therefore not immediately appealable. We also conclude that the second notice of appeal, which was filed after the conclusion of the underlying lawsuit, confers this court with jurisdiction to consider O'Callaghan's appeal.

¶ 34     Supreme Court Rule 301 provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). "A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *Silverstein*, 87 Ill. 2d at 171. Discovery orders in a pending case are not final orders and therefore are not appealable under Rules 301 and 304. *Silverstein*, 87 Ill. 2d at 171; *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002); *Lewis*, 306 Ill. App. 3d at 921. Instead, they are reviewable on appeal from the final judgment. *Reda*, 199 Ill. 2d at 54.

¶ 35     The question before us is whether the sanction orders entered in this case were final judgments that were immediately appealable or whether they were interlocutory orders that were reviewable only after the conclusion of the underlying lawsuit. We find the answer to this question in *Silverstein* and *Lewis*, decisions in which our supreme court and this appellate court considered the nature of a discovery order entered against a nonparty.

¶ 36     In *Silverstein*, 87 Ill. 2d at 169-70, the Illinois Attorney General filed suit against five individual defendants. William Currie, who was not a party to the action, was subpoenaed by one of the defendants for a discovery deposition and for the production of certain documents. Currie responded by filing a motion to quash in which he raised issues of privilege and constitutional law. The trial court denied his motion to quash but limited the scope of his deposition. On appeal, the supreme court did not consider the discovery order against a nonparty any differently from one directed against a party. Instead, the court found the order to be interlocutory and nonfinal because it was a preliminary order in a pending suit and did not represent the end of an original proceeding. *Silverstein*, 87 Ill. 2d at 173. The court observed that Currie could have either obeyed the order or defied the power of the court, and that the appellate court would have jurisdiction "only after Currie refused to obey the discovery order and a final order imposing sanctions and terminating contempt proceedings was entered against him." *Silverstein*, 87 Ill. 2d at 173-74. Thus, just like a party, Currie could obtain substantive review of the discovery order by obtaining a judgment of contempt including a fine or imprisonment. *Silverstein*, 87 Ill. 2d at 174.

¶ 37     In *Lewis*, a case that is factually similar to the present case, certain nonparty deponents refused to answer questions during discovery depositions and the plaintiffs filed a motion to compel answers to those questions and a motion for sanctions. The circuit court ordered the deponents to answer the questions and provided that a cost of $100 per day would be

assessed against any deponent not in compliance within 14 days. *Lewis*, 306 Ill. App. 3d at 920. The deponents appealed, and the appellate court considered whether it had jurisdiction. The court noted that discovery orders were not appealable under Rules 301 and 304 because they were interlocutory in nature, and that they were not within the class of appealable interlocutory orders set forth in Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011) or Rule 307 (eff. Feb. 26, 2010). *Lewis*, 306 Ill. App. 3d at 921.

¶ 38    The court also found that the orders were not appealable under Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010), which allows for an appeal from " '[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty' " because they did not mention contempt or impose a fine for a contempt finding. *Lewis*, 306 Ill. App. 3d at 922-23 (quoting Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010)). Moreover, the deponents' argument that the order was " 'cast in terms of a contempt proceeding' belie[d] the underlying thrust of that phrase as the order lacks the requisite elements discussed above" (referring to the collateral and independent characteristics of the contempt proceeding coupled with the finality of imposing an appropriate penalty for contempt). *Lewis*, 306 Ill. App. 3d at 924. The court reasoned that while the refusal to answer questions might be contemptuous conduct that the penalty was designed to punish, this did "not vitiate the necessity that the trial court make a finding of contempt." *Lewis*, 306 Ill. App. 3d at 924. The court then observed that the self-executing sanction was "nothing more than a sanction for discovery violations that the trial court has the authority to enter pursuant to Supreme Court Rule 219." *Lewis*, 306 Ill. App. 3d at 924. The court reasoned that "if deponents' argument was followed, it would effectively transform typical interlocutory discovery orders into final appealable orders simply because discovery sanctions were imposed." *Lewis*, 306 Ill. App. 3d at 924.

¶ 39    Finally, the court rejected the deponents' argument that nonparties are able to appeal discovery orders because they are not involved in the underlying action and thus an order compelling disclosure resolves the proceeding and constitutes a final order. The court reasoned that this argument was in direct conflict with *Silverstein*, in which "[t]he supreme court did not view the discovery order involving a nonparty any differently from one involving a party." *Lewis*, 306 Ill. App. 3d at 924-25. For these reasons, the court held that it did not have jurisdiction to consider the deponents' appeal. *Lewis*, 306 Ill. App. 3d at 926.

¶ 40    Applying these principles to the present case, we find that the sanction orders were interlocutory in nature and reviewable only on appeal from the final judgment in the underlying action. The sanction orders do not mention contempt or impose a sanction as punishment for a contempt finding. See *Lewis*, 306 Ill. App. 3d at 922-23. Instead, the sanctions were explicitly imposed pursuant to Supreme Court Rule 219. Therefore, the orders were not final judgments subject to immediate appellate review but, instead, were discovery orders entered against a nonparty that could only be reviewed at the conclusion of the underlying case. See *Silverstein*, 87 Ill. 2d at 171, 173; *Lewis*, 306 Ill. App. 3d at 924. Accordingly, O'Callaghan's first notice of appeal (number 1-11-1505) was premature because it was filed prior to the conclusion of the underlying action. However, O'Callaghan's second notice of appeal (number 1-12-0918) conferred our jurisdiction because it was filed within 30 days of the order voluntarily dismissing count II of Dolan's complaint. That order

-10-

was a "final judgment" because it disposed of the only remaining count in the complaint and the only thing left to do after entry of the agreed order was to proceed with the execution of the judgment previously rendered on count I of the complaint. For these reasons, we conclude that O'Callaghan's second notice of appeal conferred our jurisdiction under Supreme Court Rule 301. Our conclusion is not altered by the fact that the claims raised by O'Callaghan in this appeal pertain only to the sanction orders and not to the underlying judgment. O'Callaghan's failure to raise any other issues on appeal means only that those issues are arguably waived. See *People v. Harris*, 206 Ill. 2d 1, 12-13 (2002) (issues that could have been raised on direct appeal, but were not, are forfeited). Accordingly, and in light of our consolidation order of April 26, 2012, we deny Dolan's motion to dismiss for lack of jurisdiction.

¶ 41 Having concluded that our jurisdiction is proper, we now consider O'Callaghan's challenges to the orders imposing sanctions against him. Those sanctions were imposed pursuant to Supreme Court Rule 219, which states:

"(a) Refusal to Answer or Comply with Request for Production. If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on notice to all persons affected thereby, the proponent of the question may move the court for an order compelling an answer. If a party or other deponent refuses to answer any written question upon the taking of his or her deposition or if a party fails to answer any interrogatory served upon him or her, or to comply with a request for the production of documents or tangible things or inspection of real property, the proponent of the question or interrogatory or the party serving the request may on like notice move for an order compelling an answer or compliance with the request. If the court finds that the refusal or failure was without substantial justification, the court shall require the offending party or deponent, or the party whose attorney advised the conduct complained of, or either of them, to pay to the aggrieved party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. If the motion is denied and the court finds that the motion was made without substantial justification, the court shall require the moving party to pay to the refusing party the amount of the reasonable expenses incurred in opposing the motion, including reasonable attorney's fees.

(b) Expenses on Refusal to Admit. If a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making the proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.

(c) Failure to Comply with Order or Rules. If a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial

-11-

Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

(i) That further proceedings be stayed until the order or rule is complied with;

(ii) That the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates;

(iii) That the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;

(iv) That a witness be barred from testifying concerning that issue;

(v) That, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that the offending party's action be dismissed with or without prejudice; or

(vi) That any portion of the offending party's pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue; or

(vii) That in cases where a money judgment is entered against a party subject to sanctions under this subparagraph, order the offending party to pay interest at the rate provided by law for judgments for any period of pretrial delay attributable to the offending party's conduct.

In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty. When appropriate, the court may, by contempt proceedings, compel obedience by any party or person to any subpoena issued or order entered under these rules. Notwithstanding the entry of a judgment or an order of dismissal, whether voluntary or involuntary, the trial court shall retain jurisdiction to enforce, on its own motion or on the motion of any party, any order imposing monetary sanctions, including such orders as may be entered on motions which were pending hereunder prior to the filing of a notice or motion seeking a judgment or order of dismissal.

Where a sanction is imposed under this paragraph (c), the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order.

(d) Abuse of Discovery Procedures. The court may order that information obtained through abuse of discovery procedures be suppressed. If a party wilfully obtains or attempts to obtain information by an improper discovery method, wilfully obtains or attempts to obtain information to which that party is not entitled, or otherwise abuses these discovery rules, the court may enter any order provided for in paragraph (c) of this rule.

(e) Voluntary Dismissals and Prior Litigation. A party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing

a lawsuit. In establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party. The court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, expert witness fees, reproduction costs, travel expenses, postage, and phone charges." Ill. S. Ct. R. 219 (eff. July 1, 2002).

¶ 42　　O'Callaghan contends that the sanction orders are void because the circuit court lacked personal jurisdiction over him. The issue of whether the circuit court had personal jurisdiction over O'Callaghan is a question of law that is reviewed *de novo*. *Badea v. Phillips*, 389 Ill. App. 3d 292, 296 (2009); *In re John C.M.*, 382 Ill. App. 3d 553, 558 (2008). The resolution of this issue turns on an interpretation of Rule 219 (Ill. S. Ct. R. 219 (eff. July 1, 2002)), which is also a question of law that is reviewed *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002).

¶ 43　　O'Callaghan raises numerous claims in support of his contention that he was not subject to the circuit court's jurisdiction. These include that he was not a "party" or a defendant in the case, that he was not served with process and that he did not voluntarily appear in the case except to make a "special limited appearance" challenging the court's jurisdiction. O'Callaghan also claims that the court did not rule on his *pro se* "motion to quash" his special appearance objecting to jurisdiction or his "petition for relief from judgment under section 2-1401 of the Code."

¶ 44　　The flaw in all of O'Callaghan's claims is that although he was not a "defendant" or a "party" to the lawsuit at the time the motion for sanctions was filed, Supreme Court Rule 219 provides the circuit court with authority to sanction a nonparty such as O'Callaghan. The rule states that "[i]f a party, *or any person at the instance of or in collusion with a party*, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just." (Emphasis added.) Ill. S. Ct. R. 219(c) (eff. July 1, 2002). The rule then provides a nonexhaustive list of possible sanctions and later provides for circumstances under which the court can also impose sanctions in the form of attorney fees on a party or his or her attorney. See Ill. S. Ct. R. 219(c). In this case, O'Callaghan is the person who allegedly refused to comply with the court's discovery orders and defendant is the party to the case. If the court found that O'Callaghan unreasonably failed to comply with discovery orders "at the instance of or in collusion with" defendant, the rule specifically allowed the court to enter "such orders as are just." See Ill. S. Ct. R. 219(c) (eff. July 1, 2002). "A just order of sanctions under Rule 219(c) is one which, to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). In this respect, we note that it is well settled that a circuit court has wide discretionary powers in matters of pretrial discovery and that the court has discretion to impose sanctions pursuant to Rule 219(c) (eff. July 1, 2002). *Redelmann v. K.A. Steel Chemicals, Inc.*, 377 Ill. App. 3d 971, 976 (2007). Given these principles and the broad language of the rule, we conclude that a "just order" could include sanctions against a

nonparty deponent such as O'Callaghan.

¶ 45    This reading of Rule 219(c) is directly supported by the decision in *National Wrecking Co. v. Midwest Terminal Corp.*, 234 Ill. App. 3d 750, 769 (1992), in which the appellate court held that sanctions under Rule 219(c) are not limited to a party or his or her attorney. In *National Wrecking*, the appellants, Midwest Terminal Corporation and its attorneys Raymond Harkrider and Stephen Sadin, appealed from an order of the circuit court which, among other things, imposed sanctions against the appellants in the form of attorney fees to the plaintiff. The attorney at issue in the case, Harkrider, was also Midwest's secretary and acted on its behalf in connection with work performed by the plaintiff on property owned by the defendant. *National Wrecking*, 234 Ill. App. 3d at 755. At some point during pretrial proceedings, the circuit court granted the plaintiff's motion to disqualify Harkrider as counsel for the defendant because of the likelihood that he would be called as a witness at trial. *National Wrecking*, 234 Ill. App. 3d at 756-57. Sadin and another attorney subsequently appeared as counsel on the defendant's behalf. One year after Harkrider was disqualified as counsel and several months before trial, the plaintiff filed a motion for sanctions, alleging that statements in Midwest's pleadings, motion and certain discovery papers were made for an improper purpose. *National Wrecking*, 234 Ill. App. 3d at 757. As part of its ruling on that motion, the court awarded sanctions in connection with actions taken by Harkrider during the discovery process. *National Wrecking*, 234 Ill. App. 3d at 759-60. The court found that these actions were in violation of the court's orders outlining the extent to which Harkrider could participate in the proceedings after his disqualification. *National Wrecking*, 234 Ill. App. 3d at 759. The court referenced Harkrider's conduct at a discovery meeting that took place after he was disqualified as counsel as being " 'shameful and an abuse of the discovery process' " and found that the sanctions should be imposed against Sadin and Harkrider "because of Sadin's failure to control his client." *National Wrecking*, 234 Ill. App. 3d at 759-60. The court ordered the plaintiff to submit a fee petition detailing the expenses it incurred in connection with the sanctioned conduct. The court later granted that petition and awarded the plaintiff a certain amount in sanctions pursuant to both section 2-611 of the Code and Supreme Court Rule 219(c), and ordered that Midwest, Harkrider and Sadin were jointly and severally liable for paying the amount. *National Wrecking*, 234 Ill. App. 3d at 760.

¶ 46    Similar to O'Callaghan's claim in this case, Midwest argued on appeal that the order imposing sanctions against Harkrider had to be reversed on the ground that Harkrider was "not amendable to sanctions because he did not sign any papers either as a party or a lawyer." *National Wrecking*, 234 Ill. App. 3d at 769. The appellate court found that Rule 219 did "not limit imposition of sanctions only to parties or their attorneys" and therefore affirmed the court's sanction order. *National Wrecking*, 234 Ill. App. 3d at 769.

¶ 47    Applying the holding of *National Wrecking* to the facts of this case, we find that Rule 219(c) provided a legal basis for the circuit court to sanction O'Callaghan. In *National Wrecking*, 234 Ill. App. 3d at 759-60, the person sanctioned was neither a party nor an attorney at the time he engaged in the sanctioned conduct. Similarly, in this case, O'Callaghan was not a "party" to the lawsuit when he engaged in the conduct for which the circuit court sanctioned him. However, as discussed above and as set forth in *National Wrecking*, Rule 219(c) does not limit sanctions to a party or its attorney. See *National*

-14-

*Wrecking*, 234 Ill. App. 3d at 769.

¶ 48       O'Callaghan nevertheless cites *In re A.M.*, 128 Ill. App. 3d 100, 103 (1984), for the proposition that "[i]n order to submit oneself to the court's personal jurisdiction, the individual must take some action in a personal capacity which recognizes the power of the court over the individual." He then claims that he did not submit himself to the court's jurisdiction by merely being present in court and providing deposition testimony. O'Callaghan also cites *Whitley v. Lutheran Hospital*, 73 Ill. App. 3d 763, 766 (1979), for the proposition that to properly be subjected to the court's jurisdiction, process must issue and that it is "the power acquired by service of subpoena that permits the court to compel discovery from nonparty deponents." He claims that he was never served with process and that he did not voluntarily appear at his deposition except in the limited capacity of a representative of a corporate defendant pursuant to Supreme Court Rule 206(a)(1). These claims are without merit.

¶ 49       The record is devoid of any indication as to the circumstances under which O'Callaghan initially appeared to be deposed. As the appellant, it is O'Callaghan's burden to provide a sufficiently complete record to support a claim of error and, absent such a record, we will resolve any doubts arising from the incompleteness of the record against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005). Accordingly, we must presume that O'Callaghan appeared for his deposition voluntarily, thus obviating the need for a subpoena. At oral arguments in this case, counsel for O'Callaghan indicated that he was unsure how O'Callaghan initially came to be deposed but that at some point O'Callaghan appeared by agreement of the parties in the sense that Dolan obtained an order for defendant to be deposed and O'Callaghan was the only person who could appear pursuant to that order. Moreover, the record shows that O'Callaghan appeared to resume his deposition each time he was ordered to do so by the court. As O'Callaghan stated in his *pro se* motion to quash, "after this court ordered Mr. O'Callaghan to resubmit for further deposition in regard to the questions [he] did not answer, he did submit to further deposition." Under these circumstances, Dolan had no reason to subpoena O'Callaghan as a witness. A party's appearance before the trial court with no contest of the court's jurisdiction generally constitutes a waiver of any claim that failure to serve summons deprived the court of jurisdiction. *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 806 (1985). Although O'Callaghan was not a "party" at the times relevant to this appeal, we believe this principle applies with equal force to this case. Accordingly, O'Callaghan cannot appear at a deposition voluntarily or after being ordered to do so by the court and later complain that the circuit court lacked jurisdiction over him because he was not served with process.

¶ 50       Additionally, O'Callaghan took actions in a personal capacity which recognized the power of the court over him. Most importantly, as noted above, he appeared to resume his deposition each time he was ordered to do so by the court. O'Callaghan's attempt to avoid the consequences of having done so by claiming that he appeared for his deposition only in the limited capacity of defendant's corporate representative is unavailing. Supreme Court Rule 206(a)(1) provides a specific procedure by which an organization can designate an officer, director or managing agent to testify on its behalf when that organization has been

named as a deponent in a subpoena. Ill. S. Ct. R. 206(a)(1) (eff. Feb. 16, 2011). There is nothing in the record indicating that defendant designated O'Callaghan as a Rule 206(a)(1) witness prior to O'Callaghan appearing at his deposition. Again, it is O'Callaghan's burden to provide a sufficiently complete record, and in the absence of such a record we will presume that no such designation was made. See *Foutch*, 99 Ill. 2d at 392. O'Callaghan also cites no authority, nor are we aware of any, holding that in the absence of a Rule 206(a)(1) designation, a deponent can simply appear at a deposition and claim that he is appearing only in the capacity of a Rule 206 corporate representative. See *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 44 (2007) (a point raised but unsupported by citation to relevant authority is waived).

¶ 51    Finally, we note that all but one of the claims O'Callaghan raised in his motion to quash, his "special appearance" objecting to jurisdiction and his "section 2-1401 petition" are duplicative of the claims addressed above. O'Callaghan claims that the court erred in denying his motion to quash because he was not served with notice of the motion to compel or the motion for sanctions. The general purpose of notice is to apprise the person affected of the nature and purpose of a proceeding. See, *e.g.*, *Wendl v. Moline Police Pension Board*, 96 Ill. App. 3d 482, 487 (1981) ("If some notice is required, then, at a minimum, it must sufficiently apprise the person affected concerning the nature and purposes of any proceedings."); *Hyon Waste Management Services, Inc. v. City of Chicago*, 53 Ill. App. 3d 1013, 1018 (1977) ("The test of the adequacy of notice is whether it clearly apprises a defendant of the claims to be defended against and whether the defendant, on the basis of the notice given, could anticipate the possible effects of the proceeding."); *City of Marseilles v. Union Bank*, 317 Ill. App. 3d 931, 934 (2000) ("Notice is constitutional where it will 'apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))).

¶ 52    In this case O'Callaghan only claims that the motion to compel and the motion for sanctions were not served upon him individually. Importantly, he does not claim that he was unaware of these motions or of the consequences of his failure to comply with the court's orders. Any such claim would be belied by the record. Both motions were served upon counsel for defendant, the party to the lawsuit, and defendant responded to those motions. O'Callaghan is defendant's president and agent, and counsel for defendant was also O'Callaghan's counsel when he was an individual party to the lawsuit. Further, O'Callaghan was clearly aware of the order compelling him to resume his deposition because he appeared to resume that deposition when ordered to do so by the court. His comments at his deposition, including his statement that his refusal to answer certain questions was "in compliance with Judge Goldberg's order," also make clear that O'Callaghan was aware of the court's July 3, 2008, order directing him to answer questions regarding Colleagues, P.C. Under these circumstances, we reject O'Callaghan's claim that the court erred by denying his motion to quash because he was not served with notice of the proceedings.

¶ 53    For the reasons set forth above, we find that the circuit court had the authority under Rule 219(c) to sanction O'Callaghan. Having so concluded, we now consider O'Callaghan's contention that the circuit court lacked a legal or factual basis upon which to sanction him. O'Callaghan claims that he was not a subpoenaed witness and that he did not volunteer his testimony. Instead, O'Callaghan claims that he was deposed in the limited capacity of

defendant's corporate representative and that, in that capacity, he made a "good faith attempt to answer all questions he could." O'Callaghan also asserts that the court's discovery orders were vague because they did not detail what he was required to answer. Finally, O'Callaghan claims that he complied with the court's discovery orders and that the sanctions were therefore imposed for the improper purpose of punishing him. These claims are unpersuasive.

¶ 54    The imposition of sanctions under Rule 219 is committed to the sound discretion of the circuit court, and its determination will not be reversed absent a clear abuse of that discretion. *Redelmann v. K.A. Steel Chemicals, Inc.*, 377 Ill. App. 3d 971, 976 (2007); *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 67 (1995). "The sanctions authorized under Rule 219 are intended to combat abuses of the discovery system and to maintain the integrity of our court system." *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1075 (2001). Under Rule 219, the trial court must choose a sanction that will promote discovery, not impose punishment on a litigant. *Wilkins v. T. Enterprises, Inc.*, 177 Ill. App. 3d 514, 517 (1988). As noted above, a just order is one that insures discovery and a trial on the merits. *Shimanovsky*, 181 Ill. 2d at 123.

¶ 55    In this case, we find that the circuit court did not abuse its discretion by entering sanctions against O'Callaghan. First, there was sufficient evidence presented for the court to conclude that O'Callaghan unreasonably failed to comply with the court's discovery order. When he was deposed before Dolan filed her motion to compel, O'Callaghan refused to answer questions regarding Colleagues, P.C., because he was not an individual party to the lawsuit. Despite this assertion, the circuit court granted Dolan's motion to compel and ordered O'Callaghan to resume his deposition and to answer questions on certain topics. That order was detailed and clearly directed O'Callaghan to answer questions on five specific topics. Contrary to O'Callaghan's assertion that the order was vague, it is unclear how the court's order could have been any more clear or specific. One of the topics on which O'Callaghan was required to answer questions was Colleagues, P.C. Despite the clear mandate of the court's order, the record establishes that O'Callaghan refused to answer questions regarding Colleagues, P.C., when he resumed his deposition. Given his blatant refusal to answer questions on this topic, it is unclear how O'Callaghan now claims that he complied with the court's order. Importantly, he did not claim at his resumed deposition that he lacked the knowledge to answer the questions but, instead, he claimed that he could not answer those questions because he was being deposed in the limited capacity of defendant's corporate representative. We have already addressed the issue of O'Callaghan's alleged status as defendant's corporate representative and we fail to see how the capacity in which O'Callaghan was deposed obviated his responsibility to comply with the court's order and answer the questions posed to him. Even if O'Callaghan had claimed a lack of knowledge, the circuit court could have found that his refusal to answer the questions posed to him was unreasonable given that O'Callaghan's position as defendant's president would certainly afford him the knowledge to answer those questions and given that Colleagues, P.C., is simply the current name of the corporation under which O'Callaghan practices law.

¶ 56    Second, there was sufficient evidence presented for the court to conclude that O'Callaghan's unreasonable failure to comply with the discovery order was done "at the

instance of or in collusion with" defendant. Defendant is the "party" in this case and it is undisputed that defendant is also essentially the corporation under which O'Callaghan practices law. O'Callaghan is also defendant's president, agent and majority shareholder. Under these circumstances, when O'Callaghan refused to answer questions at his deposition on the ground that he was only defendant's "corporate representative," it was not an abuse of discretion to conclude that O'Callaghan's refusal to answer was "at the instance of or in collusion with" defendant.

¶ 57    Third, we find no abuse of discretion in the court's decision to sanction O'Callaghan by requiring him to pay Dolan's attorney fees incurred in connection with the motion for sanctions. At the time the court granted Dolan's motion for sanctions, O'Callaghan had refused to comply with the court's July 3, 2008, order granting the motion to compel. Because of O'Callaghan's refusal to answer questions, Dolan was required to have her counsel file a motion to compel and later to file a motion for sanctions. Therefore, the court could have found that it was O'Callaghan who caused Dolan to incur the attorney fees that the court ordered O'Callaghan to pay. Also, in granting the motion for sanctions, the court ordered O'Callaghan to pay Dolan's attorney fees and to resume his deposition and answer the questions he previously refused to answer. The court also ordered that it would impose additional sanctions in the form of banning O'Callaghan from testifying if he resumed his deposition and still refused to answer certain questions. The court's sanction order was therefore clearly intended to promote discovery by encouraging O'Callaghan to provide answers to questions that the court deemed relevant. By not banning O'Callaghan from testifying in the sanction order, the court was trying to avoid prohibiting the testimony of one of the most important witnesses in the case and was thereby also attempting to ensure a trial on the merits. The court's sanction order was therefore consistent with the meaning of a "just order" because it was intended to combat an abuse of the discovery process and to insure discovery and a trial on the merits. See *Smith*, 323 Ill. App. 3d at 1075; *Shimanovsky*, 181 Ill. 2d at 123.

¶ 58    O'Callaghan claims that he should have been protected by the "fiduciary shield" doctrine, which he claims stands for the proposition that "the conduct of a person in a representative capacity cannot be relied upon to exercise individual jurisdiction over that person." *Hurletron Whittier, Inc. v. Barda*, 82 Ill. App. 3d 443, 447 (1980). O'Callaghan claims that because he was not subpoenaed and he was deposed only in the capacity of a corporate representative, the circuit court did not have personal jurisdiction over him and the sanction orders violated his due process rights. However, as O'Callaghan acknowledges, the fiduciary shield doctrine applies to situations where a court is attempting to exercise jurisdiction over a nonresident defendant whose conduct in Illinois was performed solely as a corporate representative and not for his or her personal benefit. O'Callaghan cites no authority applying the doctrine to this case nor does he offer any reasoned analysis as to why the doctrine should be extended. More importantly, this argument is simply a reiteration of O'Callaghan's prior claims that the sanction orders are void for lack of personal jurisdiction. We have already addressed those claims above and found them to be without merit.

¶ 59    For the reasons set forth above, we find that the court's orders imposing sanctions against O'Callaghan under Rule 219(c) are not void for lack of jurisdiction. We also find that under

the circumstances of this case, the circuit court did not abuse its discretion by imposing sanctions against O'Callaghan in the form of ordering him to pay Dolan's attorney fees incurred in relation to the motion for sanctions.

¶ 60 O'Callaghan next raises two specific claims attacking the orders awarding Dolan attorney fees. O'Callaghan first claims that the award of attorney fees in the amount of $4,781.25 was "doubly improper [because] the court had no jurisdiction over O'Callaghan and also had no jurisdiction over [Dolan's attorney, Joel Handler] because Handler had not filed a petition seeking fees be awarded to him." This claim is unpersuasive. Initially, we have already addressed the portion of this claim pertaining to the court's alleged lack of jurisdiction over O'Callaghan. Moreover, we fail to understand why the court would be required to have jurisdiction over Handler in order to award attorney fees to Dolan. In her petition for attorney fees, she attached an affidavit from Handler in which he set forth the time he spent on the motion for sanctions and the amount he billed Dolan for that time. This was sufficient to satisfy the circuit court and we find no basis to disturb the court's determination.

¶ 61 Next, O'Callaghan claims that the court's order awarding additional attorney fees was improper because it "was an award of fees for the collection of fees." O'Callaghan cites *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164 (2007), for the proposition that "attorneys who represent themselves in an action are not entitled to recover their own attorney fees." Again, this claim is unpersuasive. The court granted Dolan leave to file a petition for additional attorney fees she incurred in connection with the motion for sanctions. Dolan filed that motion and included an affidavit from Handler detailing the additional time he spent on the motion for sanctions and the fees he charged Dolan for that time. Handler's affidavit includes time spent on the initial petition for attorney fees, on the motion to quash and on the motion to vacate the sanction order. The circuit court found that these fees were incurred in connection with the motion for sanctions, and we find no basis to disturb that determination or to conclude that Handler was seeking fees for representing himself in an action.

¶ 62 In addition to Rule 219(c), we also find that the sanctions against O'Callaghan can be affirmed under Rule 219(a). We recognize that the trial court did not impose sanctions under this section of the rule. However, we can affirm the court's sanction orders on any basis in the record, particularly where our affirmance is based upon the same conduct relied upon by the trial court. See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 204 (2007) (appellate court may affirm the trial court's judgment on any basis appearing in the record, regardless of whether the trial court relied on that basis and regardless of whether the trial court's reasoning was correct); but see *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1052 (1998) (stating that because review of a sanction order focused on the specific behavior of the offending party, the court could not affirm the imposition of sanctions for any behavior other than that relied upon by the trial court).

¶ 63 Rule 219(a) specifically provides for sanctions against a party or "*other deponent*" who fails to comply with the court's discovery orders. (Emphasis added.) Ill. S. Ct. R. 219(a) (eff. July 1, 2002). The rule provides that if a deponent refuses to answer a question, the proponent of that question may move the court for an order compelling the answer. If the court finds that the refusal to answer was without substantial justification, the court is

required to order the offending "deponent" to "pay to the aggrieved party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees."

¶ 64 In this case, regardless of the capacity in which O'Callaghan was deposed, he was a "deponent" and the circuit court therefore had authority to sanction him under Rule 219(a) if the court found that he refused to comply with a discovery order without substantial justification. We find that, based upon the same conduct for which O'Callaghan was sanctioned under Rule 219(c), the circuit court could also find that O'Callaghan refused to comply with the court's discovery order and that his refusal was without substantial justification. The record shows that the procedures outlined in Rule 219(a) were followed in this case. O'Callaghan refused to answer questions during his deposition regarding the corporation known as Colleagues, P.C., on the ground that he was not appearing at the deposition in an individual capacity. Dolan thereafter filed and obtained an order compelling O'Callaghan to answer questions relating to Colleagues, P.C., and other topics that the court deemed relevant. When O'Callaghan resumed his deposition, he defied the court's order and refused to answer questions regarding Colleagues, P.C., on a basis that had already been rejected by the circuit court. Under these circumstances, we conclude that sanctions were appropriate under Rule 219(a) and we affirm the circuit court's sanction orders on this basis.

¶ 65 Finally, apart from Rule 219, the circuit court also had the power to sanction O'Callaghan pursuant to its inherent authority to control its docket. A trial court has inherent authority to control its docket and impose sanctions for failure to comply with a court order. *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632, ¶ 39. " 'The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets.' " *Cronin*, 2012 IL App (1st) 111632, ¶ 39 (quoting *Sander*, 166 Ill. 2d at 66). Here, O'Callaghan caused undue delays in the discovery process and in the case coming to trial by forcing Dolan to move to compel discovery and by then refusing to comply with the court's order compelling him to answer certain questions. See *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007) (inherent authority allows a court to "prevent undue delays in the disposition of cases caused by abuses of the litigation process"). O'Callaghan's conduct further delayed the process by requiring the parties to attend hearings on the motion to compel and by requiring Dolan to file a motion for sanctions and petitions for attorney fees. We conclude that the circuit court had the authority pursuant to Rule 219 and its inherent authority to sanction O'Callaghan by requiring him to pay Dolan's attorney fees.

¶ 66 For the reasons stated, we deny Dolan's motion to dismiss for lack of jurisdiction and we affirm the judgment of the circuit court of Cook County.

¶ 67 Affirmed.